**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JUMA JONES,
     *Plaintiff*,

    v.

SCOTT SANSOM, MACK HAWKINS,
and TOWN OF EAST HARTFORD,
     *Defendants.*

No. 3:21-cv-00442 (VAB)

**RULING AND ORDER ON MOTIONS TO DISMISS**

Juma Jones (the "Plaintiff") has sued Chief of Police Scott Sansom ("Chief Sansom"),

Deputy Chief of Police Mack Hawkins ("Deputy Chief Hawkins"), and the Town of East

Hartford (the "Town") (collectively, with Chief Sansom and Deputy Chief Hawkins, the

"Defendants") for alleged employment discrimination under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983; and the Connecticut Fair

Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.* Compl., ECF No. 1

(Mar. 30, 2021) ("Compl."). Mr. Jones also has brought a state common law cause of action for

breach of contract. *Id.*

Defendants have moved to dismiss Mr. Jones's suit in its entirety, on the grounds that the

Complaint fails to state a claim upon which relief can be granted. *See* Mot. to Dismiss, ECF No.

19 (May 21, 2021); Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 19-1 (May 21, 2021)

("First Mot. to Dismiss").

They also have moved to dismiss Mr. Jones's state common law claim for breach of

contract for lack of subject matter jurisdiction. *See* Mot. to Dismiss for Lack of Subject Matter

1

Jurisdiction, ECF No. 24 (Aug. 3, 2021); Mem. of Law in Supp. of Mot. to Dismiss for Lack of

Subject Matter Jurisdiction Over Count Nine, ECF No. 24-1 (Aug. 3, 2021) ("Second Mot. to

Dismiss").

For the following reasons, the motion to dismiss for failure to state a claim is

**GRANTED in part** and **DENIED in part**. Mr. Jones's claims under Title VII and the CFEPA

in Counts One, Two, and Six are dismissed except as to the hostile environment claim; Mr.

Jones's constitutional claims under § 1983 in Counts Three, Four, and Five are not dismissed,

except as to Chief Sansom in his official capacity and Deputy Chief Hawkins in his individual

and official capacities; and Mr. Jones's CFEPA claims in Counts Seven and Eight are not

dismissed.

The motion to dismiss the breach of contract claim in Count Nine for lack of subject

matter jurisdiction is **GRANTED**.

## I.     BACKGROUND

### A.  Factual Background

Mr. Jones, an "African-American male," allegedly has been employed by the East

Hartford Police Department ("EHPD") since 2003. Compl. ¶¶ 5, 10.

On February 22, 2013, Defendants allegedly terminated Mr. Jones from his position as a

police officer for an alleged violation of department rules regarding access to the Connecticut

On-Line Law Enforcement Communications Teleprocessing System ("COLLECT"). *Id.* ¶¶ 10,

12. Before this termination, Mr. Jones allegedly had no prior discipline reports. *Id.* ¶ 11.

Following the termination, Mr. Jones and his union allegedly grieved the termination to

the State Board of Mediation and Arbitration ("SBMA"). *Id.* ¶ 14.

On July 16, 2013, Mr. Jones, along with "two other African-American EHPD officers" sued the EHPD in federal court, alleging racial discrimination in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶ 15; *see also Jones v. East Hartford Police Dep't*, No. 13-CV-1007 (WWE) (D. Conn. 2013).[1]

On November 10, 2014, "after a full evidentiary hearing," the SBMA allegedly ordered Mr. Jones's immediate reinstatement as a police officer with the EHPD and suspension without pay. *Id.* ¶¶ 16–17.

On December 2, 2014, East Hartford appealed the SBMA decision to Connecticut Superior Court. *Id.* ¶ 18.

While the appeal was pending, the EHPD and Chief Sansom allegedly terminated Mr. Jones for a second time, "in retaliation for plaintiff's opposition to discrimination." *Id.* ¶ 19.

On February 11, 2015, the SBMA allegedly issued an order requiring the EHPD to "comply with their prior order" and reinstate Mr. Jones. *Id.* ¶ 20.

On March 2, 2016, the Connecticut Superior Court affirmed the SBMA decision. *Id.* ¶ 21. Thereafter, Defendants allegedly appealed to the Connecticut Appellate Court. *Id.* ¶ 22. This appeal allegedly was withdrawn, however, and the parties allegedly entered into a Memorandum of Agreement ("MOA") requiring East Hartford to, *inter alia*, "take all steps necessary to assist [Mr. Jones] in his efforts to receive recertification to access the [COLLECT System]." *Id.* ¶¶ 23–25.

---

[1] The Court takes judicial notice of this related action. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . ." (citation omitted)); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks and citation omitted)).

On November 21, 2017, Defendants allegedly returned Mr. Jones to work as a "Police Service Aid," which allegedly is a non-sworn position "created by [D]efendants." *Id.* ¶ 28.

On January 10, 2017, Mr. Jones allegedly had completed all recertification training required for his reinstatement except the COLLECT system recertification. *Id.* ¶ 29. Mr. Jones allegedly was unable to obtain the COLLECT recertification because Chief Sansom refused to submit a letter in support of Mr. Jones's application, "maliciously and in retaliation for plaintiff's opposing discrimination[.]" *Id.* ¶¶ 30–31, 33.

On March 2, 2017, Mr. Jones allegedly attended a hearing regarding his COLLECT recertification, where the "[D]efendants [allegedly] sabotaged plaintiff's COLLECT recertification by resurrecting previously rejected arguments[.]" *Id.* ¶ 32.

On or about December of 2019, Mr. Jones requested that Chief Sansom forward a letter to COLLECT as required for his recertification. *Id.* ¶ 37. Chief Sansom, however, again allegedly "refused to submit the proposed letter, or any letter [in] support [of Mr. Jones's] application for [COLLECT] certification[,]" allegedly in violation of the parties' MOA. *Id.* ¶¶ 39, 41–42.

Mr. Jones allegedly has not been fully reinstated as an officer to date.[2] *Id.* ¶ 43.

Defendants allegedly have "ordered [Mr. Jones] to wear an old style brown colored police uniform with a humiliating and peculiar, outdated uniform shirt, color gray," which no other person in the EHPD is required to wear. *Id.* ¶ 48. Mr. Jones alleges that this uniform puts him at risk, as it resembles a police uniform, but Mr. Jones does not possess any "police powers, weapon[s], [or] other protection devices." *Id.* ¶ 49.

---

[2] In addition, Mr. Jones allegedly "was denied the opportunity to take the sergeants promotional exam." *Id.* ¶ 54.

Deputy Chief Hawkins also allegedly has "ordered that [Mr. Jones] not leave the building for any lunch or other break during his work shift[.]" *Id.* ¶ 47.

Mr. Jones alleges that such treatment constitutes discrimination based on his race, color, national origin, and ancestry. *Id.* ¶ 59.

Mr. Jones further alleges that "Defendants [have] promoted an inappropriate racially charged atmosphere that resulted in the discrimination" he allegedly experienced. *Id.* ¶ 61.

The Town allegedly has not disciplined "[o]ther non-minority employees with similar allegations" of inappropriate use of the COLLECT system, including EHPD Dispatcher Diane Cycena and EHPD Dispatcher Kelly McElroy. *Id.* ¶¶ 50–53, 60.

As a result of Defendants' actions, Mr. Jones allegedly has "suffered significant economic harm, humiliation, physical damages, loss of sleep, headaches and stomach disorder, pain, embarrassment, emotional [and] mental upset, loss of sleep, physical pain, headaches, stomach aches, loss of enjoyment in life and anxiety, lost revenue, continued irreparable harm to his reputation, lost wages, health and pension time[,] and benefits." *Id.* ¶ 64.

### B. PROCEDURAL BACKGROUND

On March 30, 2021, Mr. Jones filed a Complaint stating nine causes of action: (1) racial discrimination and creation of a hostile work environment in violation of Title VII as to East Hartford ("Count One"); (2) retaliation in violation of Title VII as to East Hartford ("Count Two"); (3) discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment ("Count Three"); (4) denial of due process in violation of the Due Process Clause of the Fourteenth Amendment ("Count Four"); (5) discrimination and denial of due process in violation of the Fourteenth Amendment as to East Hartford ("Count Five"); (6) discrimination, retaliation, and creation of a hostile work environment in violation of the CFEPA ("Count Six");

(7) aiding and abetting in violation of the CFEPA as to Chief Sansom ("Count Seven"); (8)

aiding and abetting in violation of the CFEPA as to Deputy Chief Hawkins ("Count Eight"); and

breach of contract ("Count Nine"). Compl.

On May 21, 2021, before filing an Answer, Defendants filed a motion to dismiss the

Complaint for failure to state a claim upon which relief can be granted. *See* First Mot. to

Dismiss.

On June 11, 2021, Mr. Jones submitted a memorandum in opposition to Defendants'

motion to dismiss. *See* Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 20 (June 11, 2021)

("First Opp'n").

On June 25, 2021, Defendants filed a reply in further support of their motion to dismiss

all counts. *See* Defs.' Reply to Pl.'s Opp'n to Their Mot. to Dismiss, ECF No. 23 (June 25, 2021)

("First Reply").

On August 3, 2021, Defendants filed a motion to dismiss the breach of contract claim for

lack of subject matter jurisdiction. *See* Second Mot. to Dismiss.

On August 27, 2021, Mr. Jones filed a memorandum in opposition to Defendants' motion

to dismiss for lack of subject matter jurisdiction. *See* Mem. in Opp'n to Defs.' Mot. to Dismiss

for Subject Matter Jurisdiction, ECF No. 27 (Aug. 27, 2021) ("Second Opp'n").

On September 9, 2021, Defendants filed a reply in further support of their motion to

dismiss. *See* Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss for Lack of Subject Matter

Jurisdiction Over Count Nine, ECF No. 28 (Sept. 9, 2021) ("Second Reply").

Meanwhile, discovery has been ongoing, and the parties have filed several motions for a

discovery conference. *See, e.g.*, Mot. for Disc. Conf., ECF No. 35 (Jan. 31, 2022); Pl.'s Mot. for

Disc. Conf., ECF No. 39 (Mar. 4, 2021); Mot. for Disc. Conf., ECF No. 40 (Mar. 4, 2021). The

Court has scheduled a discovery conference in this matter for April 5, 2022, and discovery is set to close thereafter on April 15, 2022. *See* Order, ECF No. 41 (Mar. 7, 2022).

Mr. Jones also has filed a motion to amend the Complaint, seeking to add additional defendants; this motion remains pending. *See* Pl.'s Mot. for Leave to File Am. Compl., ECF No. 43 (Mar. 15, 2022).

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "A defendant is [also] permitted to make a fact-based Rule 12(b)(1)

motion, proffering evidence beyond the [p]leading." *Id.*  "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views

the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

### A.  The Title VII and CFEPA Claims (Counts One, Two, and Six)

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [among other grounds] such individual's [ ] race[.]" 42 U.S.C. § 2000e-2(a)(1). The CFEPA analogously prohibits an employer from discriminating against an employee with respect to compensation or "conditions or privileges of employment" because of his race, among other grounds. Conn. Gen. Stat. § 46a-60(b)(1).

 The standards governing CFEPA employment discrimination claims are the same as those governing Title VII. *See Martinez v. Conn. State Libr.*, 817 F. Supp. 2d 28, 55 (D. Conn.

2011) (collecting cases); *see also, e.g.*, *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." (citation omitted)). Accordingly, the Court will analyze the claims under both statutes together.

### 1. Timeliness

A plaintiff bringing a Title VII or CFEPA claim in federal court must first exhaust their administrative remedies by presenting the claims to the EEOC. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme[.]'" (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993))); *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("A Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter." (citing 42 U.S.C. §§ 2000e-5(e) and (f)). "An employee . . . may bring a Title VII claim only if she has first filed a timely charge with the EEOC" and "must obtain a right-to-sue letter before bringing suit—and a court will typically insist on satisfaction of that condition." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 487 (2015) (internal citations omitted).

A CFEPA claim must be brought to the Connecticut Commission on Human Rights and Opportunities ("CHRO") within 180 days of the last alleged act of discrimination. Conn. Gen. Stat. § 46a-82(f); *see also Rivera v. Men's Warehouse, Inc.*, No. 3:05-CV-1907 (WWE), 2006 WL 1801705, at *3 (D. Conn. June 27, 2006). Under § 2000e-5(e)(1) of Title VII, a complaint shall be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 102 (2002) (The word "'shall' makes the act of filing a charge within the specified time period mandatory." (internal citation omitted) (alteration omitted)).[3]

Defendants argue that Mr. Jones's claims under Title VII and the CFEPA are time-barred, where he alleges discriminatory acts dating back to February 2019 at the latest but did not file a complaint with the EEOC until December 4, 2020. First Mot. to Dismiss at 12. As a result, Defendants contend that Mr. Jones has failed to allege a timely violation within the 300-day time limit to file a complaint with the EEOC, or the 180-day time limit to file a complaint with the CHRO. *Id.*

In response, Mr. Jones argues that his claims are not time-barred under Title VII or the CFEPA where he has alleged ongoing discriminatory conduct. First Opp'n at 15–16. The terminations alleged in the Complaint in 2013 and 2015, Mr. Jones contends, constitute part of the same continuing course of conduct, and, accordingly, are timely under the "continuing violation" doctrine. *Id.*

The Court agrees in part and disagrees in part.

While the statute of limitations defense "is an affirmative defense, and therefore generally not appropriate for a motion to dismiss," *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 (JCH), 2012 WL 162361, at *3 (D. Conn. Jan. 19, 2012) (citation omitted), a defendant may raise such a defense in a pre-answer motion to dismiss "where the dates in a complaint clearly show that an action is barred by a statute of limitations," *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (citing, *inter alia*, *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989));

---

[3] "In a State having an entity authorized to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Morgan*, 536 U.S. at 109 (citing § 2000e–5(e)(1)).

*see also OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007) ("A statute of limitations defense [ ] most often . . . requires a factual inquiry beyond the face of the complaint.").

Here, Mr. Jones's claims of discrimination related to wrongful termination, demotion, and denial of promotion under Title VII and the CFEPA rely upon specific, dated allegations in the Complaint: Mr. Jones' alleged termination on February 22, 2013; Mr. Jones's second alleged termination on February 5, 2015; Mr. Jones's alleged demotion to the position of Police Service Aide on June 1, 2017; and the denial of a promotion to sergeant in 2019.[4] *See* Compl. ¶¶ 12, 19, 36, 54.

These acts constitute separate unlawful employment practices, each of which "starts a new clock" for the deadline to file charges. *See Morgan*, 536 U.S. at 113–14 (Each incident of "termination, failure to promote, denial of transfer, or refusal to hire . . . constitutes a separate actionable unlawful employment practice." (quotation marks omitted)); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) (stating that a discrete discriminatory act is a "single completed action" that occurs at a specific time, and typically is actionable on its own); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."). None of these alleged events, however, fall within the 300-day period

---

[4] Mr. Jones's claim for denial of a promotion to sergeant is undated in the Complaint. *See* Compl. ¶¶ 54–55 (alleging that "[a]s a result of defendants actions, plaintiff was denied the opportunity to take the sergeants promotional exam[,]" in violation of the "Collective Bargaining Agreement and Personnel Rules of the Town of East Hartford"). The Court, however, takes judicial notice of the fact that Mr. Jones filed a motion for a preliminary injunction to restrain the Defendants from refusing to permit him to take the sergeant examination on March 12, 2019, which precedes the statute of limitations period. *See* Ex. H to Mot. to Dismiss, ECF No. 19-9 (Verified Compl., *Jones v. Town of East Hartford* (Conn. Super. Ct. Mar. 12, 2019)); *see also* Ex. I to Mot. to Dismiss, ECF No. 19-10 (Order, *Jones v. Town of East Hartford*, No. HHBCV196051213S (Conn. Super. Ct.  Mar. 13, 2019)). The Court may properly take judicial notice of the date of such a filing, even if it such filings cannot be used at this stage of the proceedings to support the truth of the matters asserted. *See supra* note 1.

beginning on February 8, 2020 (or the 180-day period for the claim under the CFEPA) and ending on December 4, 2020, the date Mr. Jones filed his complaint with the CHRO and EEOC.[5] As a result, each of these alleged violations of Title VII is untimely.

Mr. Jones's retaliation claim under Title VII and the CFEPA is subject to a similar timeliness inquiry. *See Morgan*, 536 U.S. at 110 (holding that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened'"). Mr. Jones has alleged a number of discrete retaliatory acts related to his complaints of discrimination, including a termination, a demotion, and a refusal by Chief Sansom to submit a required letter to COLLECT in June 2017 and June 2019. *See* Compl. ¶¶ 19, 28, 31, 39. Each of those acts "occurred," for statute of limitations purposes, at the times alleged in the Complaint, before the 300-day or 180-day period, and, as a result, are time-barred.

Under the continuing violation doctrine, "if a Title VII plaintiff files an [Equal Employment Opportunity Commission] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks and citation omitted). The fact that Mr. Jones continues to suffer from the effects of the Defendants' alleged retaliation, termination, demotion, or failure to promote, however, does not make the "series" of discrete allegedly retaliatory or discriminatory acts described above a continuing violation. *See Gonzales*

---

[5] The Court takes judicial notice of the date the Complaint was filed with the EEOC on December 4, 2020. *See* Ex. K to Mot. to Dismiss, ECF No. 19-12 (May 21, 2021) (Complaint filed with EEOC on December 4, 2020); *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by defendant, the '[c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to dismiss.'") (citing *Morris v. Broadridge Fin. Servs., Inc.*, 10–CV–1707, 2010 WL 5187669, at *3 n. 2 (E.D.N.Y. Dec. 14, 2010)). "Because plaintiff's EEOC Charge is 'a public document filed in an administrative proceeding, . . . the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on' a motion to dismiss." *Id.* (citing *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010)). As a result, February 8, 2020 represents the first date of the applicable 300-day period.

*v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) ("The mere fact that the effects of retaliation [or discrimination] are continuing does not make the [ ] act itself a continuing one."); *Chin*, 685 F.3d at 157 ("Discrete acts . . . which fall outside the limitations period[] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.").

The timeliness inquiry differs, however, for Mr. Jones's hostile work environment claim, as, by its nature, this variety of "unlawful employment practice [ ] cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115 (internal quotation marks omitted). In his Complaint, Mr. Jones has alleged a "hostile work environment from November 10, 2016 to the present." Compl. ¶ 62(a). As relevant to this claim, Mr. Jones alleges that Defendants "ordered [Mr. Jones] to wear an old style brown colored police uniform with a humiliating and peculiar, outdated uniform shirt, color gray, in order to humiliate [him]"; that no other person in the department is required to wear this uniform, which puts him at risk; and that Deputy Chief Hawkins in particular has "ordered that plaintiff not leave the building for any lunch or other break during his work shift." *Id.* ¶¶ 47–49. These allegations are not dated, nor is the allegation that Defendants have "refused to take the necessary steps" for Mr. Jones to obtain COLLECT certification, as required to rejoin the police force. *Id.* ¶¶ 38–46. Viewing the allegations in the Complaint in the light most favorable to Mr. Jones, these allegations are ongoing, and, therefore, not time-barred.

Accordingly, the Title VII and CFEPA claims of disparate treatment, wrongful termination, and retaliation in Counts One, Two, and Six will be dismissed as time-barred. The Title VII and CFEPA claims of a hostile work environment, however, will proceed.

### 2. Failure to State a Claim

To establish a hostile work environment claim under Title VII and the CFEPA, a plaintiff must show "that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Brittell v. Dep't. of Corr.*, 247 Conn. 148, 166–67 (1998) (applying the same standards to a hostile work environment claim under the CFEPA).

In *Harris,* the Supreme Court laid out a two-part test for hostile workplace claims. The plaintiff must show that the workplace hostility is both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Carlone*, 770 F.3d at 114 (citing *Harris*, 510 U.S. at 21–22). "There is no 'mathematically precise test,' however, for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment." *Id.* (quoting *Harris*, 510 U.S. at 22–23). "Instead, courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Defendants argue that the conduct alleged is not "severe" or "pervasive" as a matter of law, where Mr. Jones alleges, in addition to his termination, demotion, and failure to promote claims, "only that Defendants allegedly failed to help him become COLLECT certified . . . , Deputy Chief Hawkins will not allow him to leave headquarters for lunch[,] and he is required to

wear a different uniform[.]" First Mot. to Dismiss at 22–25. Defendants also argue that Mr. Jones has not properly alleged a plausible connection between the alleged harassing behavior and his protected status: his race. *See id.* at 22–23.

The Court disagrees, at least at this stage of the proceedings.

While it may be appropriate to dismiss a pleading that does not allege more than a mere "slight," *Witek v. City of New York*, 807 F. App'x 52, 55 (2d Cir. 2020) (summary order), or even isolated discriminatory remarks, *see Brown v. Coach Stores*, 163 F.3d 706, 713 (2d Cir. 1998) (affirming dismissal where complaints alleges that supervisor "made, on occasion, racist remarks and one such comment was directed at [the plaintiff"), the allegations in this Complaint are not so limited. Given the alleged circumstances, and "draw[ing] all reasonable inferences in favor of plaintiff," *Sweet*, 235 F.3d at 83, resolution of the specific legal claim brought here should be postponed, until at least the summary judgment stage, as even the cases cited by Defendants suggest, *see* First Mot. to Dismiss at 23–24 (citing, *inter alia*, *Tillery v. N.Y. State Off. of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23 (2d Cir. 2018) (summary order) (summary judgment); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) (post-trial); *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) (post-trial)); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly, the motion to dismiss Mr. Jones's Title VII and CFEPA claims in Counts One, Two and Six will be denied in part, as to the hostile environment claim, and otherwise granted as to the remaining alleged Title VII and CFEPA violations.

### B.  The Equal Protection and Due Process Claims (Counts Three, Four, and Five)

Mr. Jones also seeks relief under 42 U.S.C.§ 1983 for alleged violations of his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, including against the Town, as well as against Deputy Chief Hawkins and Chief Sansom in their individual and official capacities. *See* Compl. ¶¶ 79–103.

Defendants argue, first, that the claims against Chief Sansom and Deputy Chief Hawkins in their official capacities should be dismissed as duplicative of claims against the Town; second, that the claims are time-barred; third, that, to the extent that Mr. Jones's claims are not precluded by earlier litigation, he has failed to state a claim for a constitutional violation or otherwise alleged the requisite level of personal involvement of Chief Sansom or Deputy Chief Hawkins as required to bring a claim against them in their individual capacities; and, finally, that both Chief Sansom and Deputy Chief Hawkins are entitled to qualified immunity for their alleged actions. *See* First Mot. to Dismiss at 10–11, 13–21, 28–39.

The Court will address each of these arguments below.

### 1.  Official Capacity Claims

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City N.Y.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted); *see also Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself." (citation omitted)).

"[I]n a suit against a public entity, naming officials of the public entity in their official capacities add[s] nothing to the suit." *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2001) (internal quotation marks and citation omitted). To the extent individual defendants are sued in their official capacities, "these suits should be dismissed, because the municipal entities are the real parties in interest, and thus 'a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.'" *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (quoting *Graham*, 473 U.S. at 166) (collecting cases).

In reliance on this case law, Defendants argue that, to the extent any constitutional claims are brought against Chief Sansom and Deputy Chief Hawkins in their official capacities, as opposed to their individual capacities, those claims must be dismissed as duplicative of Mr. Jones's constitutional claims under § 1983 against the Town of East Hartford. First Mot. to Dismiss at 10–11.

The Court agrees.

"[I]t is well-settled that an official-capacity suit is, in all respects other than name, to be treated as a suit against the municipal entity of which the officer is an agent. Hence, within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Lozada v. Cnty. of Nassau*, No. 16-CV-6302 (JS) (AYS), 2021 WL 1209740, at *10 (E.D.N.Y. Mar. 31, 2021) (internal alterations, citations, quotation marks omitted); *accord Graham*, 473 U.S. at 165–66 (citing *Monell*, 436 U.S. at 690 n.55).

As a result, to the extent that Mr. Jones brings claims under § 1983 against Deputy Chief Hawkins and Chief Sansom in their official capacities, the claims will be dismissed. *See, e.g.*,

*Quinn v. Gould*, No. 3:19-CV-820 (VAB), 2020 WL 1234553, at *5 (D. Conn. Mar. 13, 2020) (dismissing claims against Chief of Police Department "in his official capacity . . . , as they are duplicative of the claims against the City"); *see also O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (quoting *Graham*, 473 U.S. at 166)).

Accordingly, the equal protection and due process claims against Deputy Chief Hawkins and Chief Sansom in their official capacities will be dismissed.

### 2.  The Statute of Limitations Period

The limitations period for filing a § 1983 action in Connecticut is three years. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). As in other civil rights cases, this cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his [or her] action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks and citation omitted); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." (internal quotation marks and citation omitted)).

Defendants argue that Mr. Jones's equal protection claim is time-barred, where any alleged selective enforcement of discipline occurred, at the latest, on June 1, 2017, according to the allegations in the Complaint, when Mr. Jones allegedly was demoted to the position of a Police Service Aid. First Mot. to Dismiss at 13. Similarly, Defendants argue that the due process claim is time-barred, where it is based upon an alleged lack of procedure around the alleged demotion on June 1, 2017. *Id.*

In response, Mr. Jones argues that the claims are timely where the Complaint alleges that Chief Sansom refused to sign a letter for Mr. Jones' COLLECT certification on or about December of 2019, which falls within three years of the filing of the Complaint. *See* First Opp'n at 18–19 (citing Compl. ¶¶ 37–40). He also argues that the Complaint is timely where it alleges continuing and ongoing violations. *See id.* at 16–19.

The Court agrees in part and disagrees in part.

"The considerations set forth by the Supreme Court in *National Railroad* [as to Title VII claims] apply to § 1983 employment claims as well." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); *see also, e.g.*, *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (citing *National Railroad* and affirming dismissal of § 1983 employment discrimination claims as, *inter alia,* untimely). As a result, here, as in the Title VII context, discrete acts occurring before the last date of the applicable limitations period—for this claim, March 30, 2018—are time-barred, including Mr. Jones's alleged terminations in 2013 and 2015, as well as his demotion to the position of a Police Service Aide in 2017.[6] As a result, the Court will dismiss the equal protection and due process claims brought under § 1983 based upon these alleged adverse employment actions.[7]

To the extent that Mr. Jones alleges constitutional violations resulting from Defendants' alleged refusal to reinstate him as a police officer in or around 2019, *see* Compl. ¶¶ 37–46,

---

[6] The Court notes that Mr. Jones has not alleged a constitutional claim for a hostile work environment or an independent cause of action for retaliation under the First Amendment. As a result, although retaliation and hostile work environment claims are brought under Title VII, they are not addressed in the Court's analysis of claims under § 1983.

[7] Because the Court dismisses the termination claims on statute of limitations grounds, the Court will not address Defendants' argument that these claims are barred by *res judicata* or by collateral estoppel. *See* First Mot. to Dismiss at 14–18.

however, those claims are not time-barred.[8] Such allegations fall within the limitations period,

and, accordingly, will be analyzed further below.

### 3. Substantive Claims

#### i. Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment protects public employees

from race discrimination and retaliation for complaining about race discrimination. *See Vega*,

801 F.3d at 82. Public employees may bring discrimination and retaliation claims under 42

U.S.C. § 1983 against "responsible persons acting under color of state law." *Id.* at 87. Any state

employee "acting in his official capacity" acts "under color of state law." *Id.* at 88 (internal

quotation marks omitted). A § 1983 claim also must allege that "as a result of the defendant's

actions, the plaintiff suffered a denial of [his or] her federal statutory rights, or [his or] her

constitutional rights or privileges." *Padilla v. Harris*, 285 F. Supp. 2d 263, 267 (D. Conn. 2003)

(quoting *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

To the extent that Mr. Jones alleges an equal protection claim based upon selective

enforcement,[9] Defendants assert that Mr. Jones's claim fails where: (1) Mr. Jones "does not deny

that he improperly accessed COLLECT"; and (2) Mr. Jones "has not alleged that the identified

dispatchers were sufficiently similarly situated to him to be considered proper comparators for

the purposes of any selective enforcement claim." First Mot. to Dismiss at 29–31. In support of

these arguments, Defendants rely principally upon two Second Circuit decisions: *Brown v. City of*

---

[8] The Court notes that Mr. Jones has not sought relief for a due process violation based upon alleged failure to promote in 2019, where his Complaint alleges only that he was not afforded constitutionally adequate process regarding his "demotion, denial of police officer position[,] and transfer to the lower paying 'Police Service Aid.'" Compl. ¶ 88; *see also id.* ¶ 90 ("Defendant Sansom knew that his termination and subsequent demotion and transfer, would deny plaintiff protection pursuant to the Fourteenth Amendment Due Process Clause.").

[9] The Court does not address here Defendants' arguments to dismiss Mr. Jones's equal protection claims based upon discrimination in the alleged terminations and demotion, as those claims have been dismissed at time-barred. *See supra* § III.B.2.

*Syracuse*, 673 F.3d 141 (2d Cir. 2012) and *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). *See id.*

In response, Mr. Jones argues that he has stated a claim for an equal protection violation where he has alleged that "other employees outside his protected group"—the two, non-minority dispatchers—were found to have engaged in the "same misconduct" but "were not terminated, denied COLLECT certification, or denied reinstatement . . . ." First Opp'n at 26. Mr. Jones contends that his allegation that these employees were treated "more favorably" suffices at this stage of the litigation, and, further, that any argument that they are not "proper comparators involves many premature factual resolutions." *Id.* at 25 (quotation marks omitted).

The Court agrees.

There are two "distinct pathways for proving a non-class-based Equal Protection violation." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). "First, under a selective treatment theory, Plaintiffs must show that '(1) the [Plaintiffs], compared with others similarly situated, [were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . malicious or bad faith intent to injure a person.'" *Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *3 (D. Conn. Dec. 9, 2020) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980) (alterations in original)) (hereinafter, a "*LeClair* claim"). "Impermissible considerations" include "discrimination on the basis of a defendant's personal malice or ill will towards a plaintiff." *Id.* (quoting *Hu*, 927 F.3d at 91). "The Supreme Court has also recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges [(1)] that she has been intentionally treated differently from others similarly situated and [(2)] that there is no

rational basis for the difference in treatment." *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*) (quotation marks omitted)) (hereinafter, an "*Olech* claim").

Here, Mr. Jones has alleged a *LeClair* claim against Defendants. "Unlike an *Olech* claim, a malice-based *LeClair* claim requires 'proof of a defendant's subjective ill will towards a plaintiff.'" *Id.* (citing *Hu*, 927 F.3d at 93). And "[w]hile *Olech* [claims] require[ ] an 'extremely high' degree of similarity between a plaintiff and comparator, *LeClair* [claims] merely require[ ] a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances." *Id.* (citing *Hu*, 927 F.3d at 93) (alteration in original). Given the inherently fact-intensive nature of this inquiry, courts are "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Id.* (quoting *Hu*, 927 F.3d at 97). "A general allegation that plaintiffs were treated differently from those similarly situated is insufficient to survive a motion to dismiss." *Id.* (citing *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)).

Here, Mr. Jones has not only alleged improper and retaliatory motivation, but also that "[o]ther non-minority employees with similar allegations" of inappropriate use of the COLLECT system, including EHPD Dispatcher Diane Cycena and EHPD Dispatcher Kelly McElroy, have not been disciplined. Compl. ¶¶ 31, 50–53. Regardless of whether Mr. Jones can proffer the necessary proof of subjective ill will at summary judgment, at this stage of the litigation, such allegations are sufficient to state a claim. *See Hu*, 927 F.3d at 97 (holding that "plaintiffs . . . satisfied the standard of plausibility by alleging differential treatment by the same defendant . . . for the same conduct (having a pool of standing water) at the same jobsite (the 34th Avenue Jobsite)"); *cf. Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424 (VEC) (OTW), 2021 WL 4943490, at *9 (S.D.N.Y. Aug. 31, 2021) (finding non-plausible *LeClair* claim where "[p]laintiff occasionally references what happened to younger attendance teachers or other senior staff

members" without "specifying their names, ages, positions, or any other details about them"
(internal quotation marks and citation omitted), *report and recommendation adopted*, No. 20-
CV-2424 (VEC), 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021).

Accordingly, Mr. Jones's equal protection claim will not be dismissed for failure to state
a claim upon which relief can be granted.

### ii.    Procedural Due Process

 "In order to prevail on a § 1983 claim for violation of the procedural due process rights
guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a
protected liberty or property interest; and (2) that he was deprived of that interest without due
process." *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 372 (E.D.N.Y. 2012) (internal
quotation marks and citation omitted), *aff'd*, 523 F. App'x 66 (2d Cir. 2013) (summary order).

Defendants argue that Mr. Jones has not stated a claim for a procedural due process
violation where he "was not denied any process due to him" under the standard established in
*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). First Mot. to Dismiss at 32.
Mr. Jones, Defendants argue, had a grievance process available to him, and, indeed, his
Complaint alleges he has used it; according to Defendants, this is all the process that is due. *Id.* at
32–33. Defendants also point out that Mr. Jones has not identified what constitutionally
protected property interest such procedure would protect.[10] *Id.* at 32.

Mr. Jones, in response, argues that he had a "property interest in continued employment
as a Police Officer . . . ." First Opp'n at 27–28. Further, he maintains that he has sufficiently
stated a claim that he was denied due process in relation to that constitutionally protected

---

[10] The Defendants concede, however, that Mr. Jones has a constitutionally property interest in his employment,
where it is protected by a "just cause" provision in a collective bargaining agreement. First Mot. to Dismiss at 32
(citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).

property right, where he "has been denied any resource to vindicate defendants' refusal to reinstate him as a Police Officer, particularly when that refusal is effectuated by underhand[edly] collaborating with COLLECT to deny him recertification." *Id.* at 28.

The Court agrees that Mr. Jones has stated such a claim, at least at this stage of the proceedings.

"The court looks to state law[,]" including as applied to collective bargaining agreements, "to determine the source of a Constitutionally protected property right." *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 201 (E.D.N.Y. 2012) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (holding that constitutionally protected property interests are created and defined by existing rules or understandings "stem[ming] from an independent source," which source supports a "legitimate claim of entitlement")).

Thus, whether Mr. Jones possesses an entitlement to reinstatement as a police officer relies upon his unique circumstances as applied to the appropriate provisions in the Collective Bargaining Agreement, MOA, and state law; any resolution of whether Mr. Jones has stated such a constitutionally interest, however, is more properly left to resolution at the summary judgment stage. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (holding that whether the plaintiff had a constitutionally protected property interest in a position from which he had been demoted, in light of applicable law, the collective bargaining agreement, and the plaintiff's individual circumstances "cannot be resolved on a motion to dismiss"); *see also Roth*, 408 U.S. at 577 (constitutionally protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits").

Accordingly, Mr. Jones's procedural due process protection claim will not be dismissed for failure to state a claim upon which relief can be granted.

### 4. Individual Liability

A plaintiff seeking to recover money damages under § 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit concluded that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676). "The violation must be established against the supervisory official directly." *Id.*

Defendants argue that Mr. Jones has not alleged the requisite personal involvement of either Chief Sansom or Deputy Chief Hawkins in the alleged constitutional violations at issue. First Mot. to Dismiss at 33–35. To support this argument, Defendants point out that there is "no allegation that Chief Sansom was personally involved in Plaintiff's termination." *Id.* at 34. As to Deputy Chief Hawkins, Defendants argue that the requisite personal involvement in the alleged constitutional violations has not been established where Deputy Chief Hawkins allegedly: (1)

"did not support [ ] COLLECT recertification [for Mr. Jones] in March, 2017; and (2) "ordered Plaintiff not to leave the building." *Id.* (internal quotation marks and citations omitted).

In response, Mr. Jones contends that he has adequately pled the requisite personal involvement where Chief Sansom allegedly "ordered the second, retaliatory termination" and "interfered with his reinstatement[.]" First Opp'n at 29 (citation omitted). Mr. Jones further argues that he has pled the requisite personal involvement of Deputy Chief Hawkins where he has alleged that Deputy Chief Hawkins ordered the Plaintiff not to leave the building for lunch or other breaks. *Id.* at 29–30.

The Court agrees in part and disagrees in part.

As explained previously, the only timely constitutional claim at issue here is the alleged denial of reinstatement in 2019. Given that this is the only remaining constitutional issue, the constitutional claims must be dismissed as to Deputy Chief Hawkins individually, where Mr. Jones has not alleged facts within the statute of limitations that support Deputy Chief Hawkins's personal involvement in the alleged failure to reinstate Mr. Jones in the relevant time period. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (stating that allegations of "personal involvement of [the defendants] sufficient to support their liability for wrongful acts" is required to prove constitutional violation by an individual defendant, not merely their "linkage in the . . . chain of command"); *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)).

Mr. Jones has, however, alleged the requisite level of personal involvement for Chief Sansom, where the Complaint alleges that on or about December of 2019, Mr. Jones asked Chief

Sansom to forward a proposed letter for his COLLECT certification, but Chief Sansom allegedly "refused to submit the proposed letter, or any letter [in] support [Mr. Jones's] application for [COLLECT] certification[,]" resulting in Mr. Jones's lack of reinstatement as a police officer. Compl. ¶¶ 37–42. These facts, which the Court, at this point in the litigation, is required to accept, *see York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), sufficiently allege Chief Sansom's "personal involvement" in the alleged constitutional violations at issue, *Provost*, 262 F.3d at 155.

Of course, under the doctrine of qualified immunity, the claim against Chief Sansom in his individual capacity cannot prevail unless, under the specific facts of this case, there was clearly established law that any denial of due process or equal protection related to the reinstatement violated the Fourteenth Amendment. *See Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (A defendant is entitled to qualified immunity under federal law if "(1) [the defendant's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for [the defendant] to believe that his actions were lawful at the time of the challenged act." (internal citations and quotation marks omitted)). At the motion to dismiss stage, however, a defendant asserting a qualified immunity defense "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (citation omitted).

Here, a full record regarding the circumstances surrounding the alleged refusal to reinstate Mr. Jones as a full police officer—with admissible evidence rather than only factual allegations—is not before the Court, and, accordingly, the Court will reserve judgment on

qualified immunity until the summary judgment stage, especially where the Court will have to resolve the constitutional claims brought against the Town at that stage of the litigation.[11] *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a determination of qualified immunity at the motion to dismiss stage may be "based [solely] on facts appearing on the face of the complaint"); *see also Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." (internal citation omitted)).

Accordingly, Mr. Jones's equal protection and due process claims will not be dismissed, except as to Chief Sansom in his official capacity and Deputy Chief Hawkins in his individual and official capacities.

### C.  The Aiding and Abetting Claim under CFEPA (Counts Seven and Eight)

Defendants argue that Counts Seven and Eight should be dismissed where they are a "derivative claim" and Mr. Jones "has not plead a claim for discriminatory conduct." First Mot. to Dismiss at 27–28. The Court, however, has not dismissed Mr. Jones's hostile work environment claim under the CFEPA. *See supra* § III.A.

Accordingly, the Court will not dismiss Mr. Jones's CFEPA claims in Counts Seven and Eight on these grounds.

---

[11] Defendants have not moved to dismiss the claim against the Town independently, based upon the *Monell* liability claim asserted in Count Four. *See* First Mot. to Dismiss. The Court notes, however, that, to the extent that Mr. Jones alleges that the Defendants "conspired" to violate his constitutional rights in violation of § 1983, *see, e.g.*, Compl. ¶¶ 92, 101, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct," *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal citation and quotation marks omitted). The facts alleged must constitute a "meeting of the minds" between defendants to show a conspiracy. *Marquez v. Hoffman*, No. 18-CV-7315 (ALC), 2021 WL 1226981, at \*23 (S.D.N.Y. Mar. 31, 2021) (quoting *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (dismissal under Rule 12(b)(6) is proper where "plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred")), *reconsideration denied*, 2021 WL 6133972 (S.D.N.Y. Dec. 29, 2021).

### D.  The Breach of Contract Claim (Count Nine)

In general, "before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiff['s] union." *Sweeney v. Enfield Bd. of Educ.*, No. 3:14-CV-01511 (MPS), 2015 WL 4722969, at *4 (D. Conn. 2015) (internal quotation omitted); *see also Hunt v. Prior*, 236 Conn. 421, 431–32 (1996) ("The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it" where it "deprive[s] [the] employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." (internal quotation marks and citation omitted)). As a result, in most cases, "failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Sweeney*, 2015 WL 4722969, at *4 (internal citation omitted); *see also Hunt*, 236 Conn. at 432 ("One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate." (internal quotation marks and citations omitted)).

In their second motion to dismiss, Defendants argue that the Court does not have subject matter jurisdiction over the breach of contract claim alleged in Count Nine, where Mr. Jones did not exhaust his administrative remedies before filing the complaint at issue here for alleged violation of the parties' MOA and the collective bargaining agreement. Second Mot. to Dismiss at 3–7. In support of their argument, Defendants submit the collective bargaining agreement, *see* Ex. G to Mot. to Dismiss, ECF No. 19-8 (May 21, 2021) ("CBA"), as well as an affidavit by

Chief Sansom, Aff. of Chief Scott Sansom ¶¶ 7–8, ECF No. 24-2 (Aug. 3, 2021) ("Sansom Aff.").

Mr. Jones argues that the Court can rely only upon the Complaint, rather than the extrinsic evidence provided by Defendants, to decide whether exhaustion occurred. Second Opp'n at 3–4. In the alternative, Mr. Jones argues that exhaustion was not required because it was futile or inadequate, and, further, that the representative union was hostile to him, or that, if the Court finds that there are gaps surrounding his exhaustion, that he be allowed to amend his Complaint. *Id.* at 4–5.

The Court disagrees.

Defendants have provided the collective bargaining agreement between the Union and the Town, of which Article XXIII sets forth a procedure to "permit discussion and resolution of all grievances" related to "discharge, suspension or other disciplinary action" or "charge[s] of favoritism or discrimination." *See* CBA at 36–37. Defendants also have proffered evidence, in the form of Chief Sansom's affidavit, that, "[a]t no time since the MOA was executed in October, 2016 has Mr. Jones or [the East Hartford Police Union] filed a grievance on Mr. Jones'[s] behalf," nor has Mr. Jones or the union "filed a municipal prohibited practice complaint in accordance with § 7-471(5). Sansom Aff. ¶¶ 7–8.

Without any affidavits, evidence, or non-conclusory factual allegations to the contrary, Mr. Jones has failed to show exhaustion of his administrative remedies, as required to provide this Court with subject matter jurisdiction over the dispute. *See Carter*, 822 F.3d at 56 ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading[,]" and, in "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction[,]" plaintiffs must come forward

31

with evidence to the contrary (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). The Court therefore lacks subject matter jurisdiction over the breach of contract dispute.

This is especially so where the Complaint alleges that Mr. Jones previously grieved a termination complaint with the Union to the SBMA, which found in his favor, *see* Compl. ¶¶ 14, 16, and, as a result, it can hardly be argued that recourse to the grievance mechanism "could not result in a favorable decision and invariably would result in further judicial proceedings." *Hunt*, 236 Conn. at 433 (internal quotation omitted). Nor can the Court find that the grievance procedures were inadequate where, if he had availed himself of the grievance procedure under the CBA, Mr. Jones would have received "immediate consideration and review of the very issue of wrongful [acts by Defendants] that the plaintiff raises in this action." *Id.* (quoting *LaCroix v. Bd. of Educ. of Bridgeport*, 199 Conn. 70, 84 (1986)).

Accordingly, the Court will dismiss Count Nine for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss for failure to state a claim is **GRANTED in part** and **DENIED in part**.

Mr. Jones's claims under Title VII and the CFEPA in Counts One, Two, and Six are dismissed except as to the hostile environment claim; Mr. Jones's constitutional claims under § 1983 in Counts Three, Four, and Five are not dismissed, except as to Chief Sansom in his official capacity and Deputy Chief Hawkins in his individual and official capacities; and Mr. Jones's CFEPA claims in Counts Seven and Eight are not dismissed.

The motion to dismiss the breach of contract claim in Count Nine for lack of subject matter jurisdiction is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March, 2022.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge