## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JUMA JONES,
*Plaintiff*,

v.                                                  No. 3:21-cv-00442 (VAB)

SCOTT SANSOM, CHIEF OF POLICE,
MACK HAWKINS, DEPUTY CHIEF OF
POLICE, AND TOWN EAST HARTFORD,
*Defendants.*

## RULING AND ORDER ON MOTIONS IN LIMINE

Juma Jones ("Mr. Jones" or "Plaintiff") has sued Chief of Police of the Town of East

Hartford Police Department, Scott Sansom ("Chief Sansom"), Deputy Chief of Police of the

Town of East Hartford Police Department, Mack Hawkins ("Deputy Chief Hawkins"), and the

Town of East Hartford (the "Town," collectively the "Defendants") for employment

discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et*

*seq.*; 42 U.S.C. § 1983; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.

Gen. Stat. § 46a-60 *et seq*. Compl., ECF No. 1 (Mar. 30, 2021) ("Compl."). Mr. Jones also

brought a state common law cause of action for breach of contract. *Id*.

In advance of trial, both sides have filed motions to exclude or limit certain types of

evidence. *See* Mot. *in Limine* to Preclude Pl.'s Arrests, ECF No. 112 (Sept. 1, 2023) ("Pl.'s Mot.

Re: Pl.'s Arrests"); Mot. *in Limine* to Preclude Evidence Regarding Alleged Promise to Speak

with Alaric Fox, ECF No. 114 (Sept. 1, 2023) ("Defs.' Mot. Re: Promise"); Mot. *in Limine* to

Preclude Evidence Regarding POSTC/COLLECT Certification, ECF No. 115 (Sept. 1, 2023)

("Defs.' Mot. Re: Certifications"); Mot. *in Limine* to Preclude Evidence Alleged Conspiracy,

ECF No. 116 (Sept. 1, 2023) ("Defs.' Mot. Re: Conspiracy"); Mot. *in Limine* to Preclude

Evidence Regarding Economic Damages, ECF No. 117 (Sept. 1, 2023) ("Defs.' Mot. Re: Economic Damages"); Mot. *in Limine* to Preclude the IA History, ECF No. 118 (Sept. 1, 2023) ("Defs.' Mot. Re: IA History"); Mot. *in Limine* to Preclude "Me Too" Evidence, ECF No. 119 (Sept. 1, 2023) ("Defs.' Mot. Re: 'Me Too' Evidence"); Mot. *in Limine* to Preclude Evidence Regarding Diane Cycenas and Kelly McElroy, ECF No. 120 (Sept. 1, 2023) ("Defs.' Mot. Re: Cycenas and McElroy"); Mot. *in Limine* to Preclude Pl. from Calling Town Counsel as Witness, ECF No. 121 (Sept. 1, 2023) ("Defs.' Mot. Re: Town Counsel as Witness"); Mot. *in Limine* to Preclude Evidence Regarding the Memorandum of Agreement ("MOA"), ECF No. 122 (Sept. 1, 2023) ("Defs.' Mot. Re: MOA"); Mot. *in Limine* to Preclude Evidence Regarding Pl.'s Assignment to Police Services Aide Position, ECF No. 123 (Sept. 1, 2023) ("Defs.' Mot. Re: PSA Position"); Mot. *in Limine* to Preclude Evidence Regarding COLLECT Certification of Waterbury Officer Zentek, ECF No. 124 (Sept. 1, 2023) ("Defs.' Mot. Re: Zentek Certification"); Mot. *in Limine* to Preclude Evidence Regarding the Union Blog Post, ECF No. 125 (Sept. 1, 2023) ("Defs.' Mot. Re: Union Blog Post"); Mot. *in Limine* to Preclude Evidence Regarding Thomas Castagna, ECF No. 126 (Sept. 1, 2023) ("Defs.' Mot. Re: Castagna"); Mot. *in Limine* to Preclude Expert Testimony of Treating Therapists, ECF No. 127 (Sept. 1, 2023) ("Defs.' Mot. Re: Expert Testimony"); Mot. *in Limine* to Preclude Evidence Regarding Litigation Involving Curt Stoldt, ECF No. 128 (Sept. 1, 2023) ("Defs.' Mot. Re: Stoldt Litigation"); Mot. *in Limine* to Preclude Evidence of Administrative Appeal, ECF No. 129 (Sept. 1, 2023) ("Defs.' Mot. Re: Administrative Appeal"); Mot. *in Limine* to Preclude Previously Dismissed Claims, ECF No. 130 (Sept. 1, 2023) ("Defs.' Mot. Re: Dismissed Claims"); Mot. *in Limine* to Preclude Evidence Regarding Events before August 25, 2017, ECF No. 141 (Sept. 15, 2023) ("Defs.' Mot. Re: Events before August 25, 2017").

For the following reasons, the [118], [119], and [130] motions are **DENIED without prejudice** to renewal at trial.

The [117] and [123] motions are **DENIED**.

The [127] motion is **GRANTED** in part and **DENIED** in part. Discovery as to Mr. Behling is extended until December 15, 2023.

The [115], [116], [125], and [141] motions are **GRANTED** in part and **DENIED** in part.

The [112], [114], [120], [121], [122], [124], [126], [128], and [129] motions are **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background, and will only reiterate what is necessary to address these motions *in limine*. *See* Ruling and Order on Mots. for Summ. J., ECF No. 87 (Jan. 27, 2023) ("Order on Mots. for Summ. J."); *Jones v. Sansom*, No. 3:21-cv-442 (VAB), 2023 WL 1069487, at *1–7 (D. Conn. Jan. 27, 2023).

On March 30, 2021, Mr. Jones filed a Complaint stating nine causes of action: (1) racial discrimination and creation of a hostile work environment in violation of Title VII as to East Hartford ("Count One"); (2) retaliation in violation of Title VII as to East Hartford ("Count Two"); (3) discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment ("Count Three"); (4) denial of due process in violation of the Due Process Clause of the Fourteenth Amendment ("Count Four"); (5) discrimination and denial of due process in violation of the Fourteenth Amendment as to East Hartford ("Count Five"); (6) discrimination, retaliation, and creation of a hostile work environment in violation of the CFEPA ("Count Six"); (7) aiding and abetting in violation of the CFEPA as to Chief Sansom ("Count Seven"); (8) aiding and abetting in violation of the CFEPA as to Deputy Chief Hawkins ("Count Eight"); and (9) breach of contract ("Count Nine"). Compl.

On May 21, 2021, before filing an Answer, Defendants filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* Mot. to Dismiss, ECF No. 19 (May 21, 2021) ("First Mot. to Dismiss").

On August 3, 2021, Defendants filed a motion to dismiss the breach of contract claim for lack of subject matter jurisdiction. *See* Mot. to Dismiss, ECF No. 24 (Aug. 3, 2021) ("Second Mot. to Dismiss").

On March 15, 2022, Mr. Jones filed a motion for leave to file an Amended Complaint. Mot. for Leave to File Am. Compl., ECF No. 43.

On March 31, 2022, the Court granted in part and denied in part Defendants' first motion to dismiss and granted Defendants' second motion to dismiss. Ruling and Order on Motions to Dismiss, ECF No. 50 (Mar. 31, 2022) ("Order on Mots. to Dismiss"). The Court dismissed Mr. Jones's Title VII and the CFEPA claims of disparate treatment, wrongful termination, and retaliation in Counts One, Two, and Six as time-barred. *Id*. at 14. The Court dismissed the equal protection and due process claims against Chief Sansom in his official capacity and Deputy Chief Hawkins in his individual and official capacities, reserving judgment on qualified immunity until the summary judgment stage. *Id*. at 19, 28–29. The Court dismissed the breach of contract claim in Count Nine for lack of subject matter jurisdiction. *Id*. at 32. Mr. Jones's Title VII and CFEPA claims of a hostile work environment remain, as well as his CFEPA claims in Counts Seven and Eight. *Id*. at 14, 29.

On April 27, 2022, Defendants filed their Answer to the Complaint. Answer, ECF No. 61.

On June 9, 2022, Defendants filed a motion to amend their Answer to add an affirmative defense. Mot to Amend Answer, ECF No. 64.

On June 15, 2022, Mr. Jones filed a motion for summary judgment. Mot. for Summ. J., ECF No. 68.

On July 15, 2022, Defendants filed a motion for summary judgment and opposition to Plaintiff's cross-motion. Mot. for Summ. J. and Opp'n to Pl.'s Cross-Motion, ECF No. 77.

On January 27, 2023, following a hearing on the parties' pending motions, the Court denied Plaintiff's motion for summary judgment, denied Plaintiff's motion for leave to file an Amended Complaint, denied as moot Defendants' motion to amend their Answer, granted Defendants' motion for summary judgment as to the equal protection, due process, and *Monell* claims against all Defendants, and denied Defendants' motion as to the Title VII and CFEPA claims against the Town and the CFEPA aiding and abetting claims against Chief Sansom and Deputy Chief Hawkins. Order on Mots. for Summ. J.; *see also* Minute Entry, ECF No. 86 (Jan. 25, 2023).

On February 10, 2023, Defendants filed a motion for reconsideration regarding the Court's order on its motions to amend and for summary judgment, which the Court subsequently denied. Mot. for Reconsideration, ECF No. 94; Order Denying Mot. for Reconsideration, ECF No. 95 (Feb. 14, 2023).

On September 1, 2023, Mr. Jones filed a motion *in limine*. Pl.'s Mot. Re: Pl.'s Arrests.

On September 1, 2023, Defendants filed seventeen motions *in limine*. Defs.' Mot. Re: Promise; Defs.' Mot. Re: Certifications; Defs.' Mot. Re: Conspiracy; Defs.' Mot. Re: Economic Damages; Defs.' Mot. Re: IA History; Defs.' Mot. Re: 'Me Too' Evidence; Defs.' Mot. Re: Cycenas and McElroy; Defs.' Mot. Re: Town Counsel as Witness; Defs.' Mot. Re: MOA; Defs.' Mot. Re: PSA Position; Defs.' Mot. Re: Zentek Certification; Defs.' Mot. Re: Union Blog Post;

Defs.' Mot. Re: Castagna; Defs.' Mot. Re: Expert Testimony; Defs.' Mot. Re: Stoldt Litigation;
Defs.' Mot. Re: Administrative Appeal; Defs.' Mot. Re: Dismissed Claims.

On September 15, 2023, Defendants filed their opposition to Plaintiff's motion *in limine*.
Defs.' Opp'n, ECF No. 138 ("Defs.' Opp'n").

On September 15, 2023, Defendants file a motion for leave to file an addition motion in
limine, which the Court granted. Mot. for Leave to File Additional Mot. in Limine; Order
Granting Mot. for Leave to File Additional Mot. in Limine, ECF No. 144 (Sept. 18, 2023).

On September 15, 2023, Defendants filed their additional motion *in limine*. Defs.' Mot.
Re: Events before August 25, 2017.

On September 18, 2023, Mr. Jones filed his opposition to Defendants' eighteen motions
*in limine*. Pl.'s Opp'n to Mots. in Limine, ECF. 145 ("Pl.'s Opp'n").

On September 20, 2023, Mr. Jones filed his reply to Defendants' opposition to his motion
*in limine*. Pl.'s Reply to Defs.' Opp'n, ECF No. 149 ("Pl.'s Reply").

On September 26, 2023, Defendants filed their reply to Plaintiff's opposition to their
motions in limine. Defs.' Reply to Pl.'s Opp'n, ECF No. 155 ("Defs.' Reply").

On October 24, 2023, the Court held a hearing on the pending motions *in limine*. Minute
Entry, ECF No. 157 (Oct. 25, 2023).

## II.   STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial
on the admissibility and relevance of certain forecasted evidence. *See Luce v. U.S.*, 469 U.S. 38,
40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent
authority to manage the course of its trials encompasses the right to rule on motions *in limine*."

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

## III.   DISCUSSION

The parties have filed various motions *in limine* challenging proposed evidence on the basis of the "law of the case" doctrine, relevance and undue prejudice, hearsay, and disclosure requirements of a treating physician.

The Court will address each topic in turn.

<u>"Law of the Case" Doctrine</u>

"The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted). Courts "may depart from the law of the case for cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id*. at 99–100 (internal quotation marks omitted).

Defendants filed two motions under this doctrine. First, Defendants move to preclude Mr. Jones from offering any evidence, testimony, argument or comment regarding claims that have already been dismissed from the case in connection with dispositive motion practice. Defs.' Mot. Re: Dismissed Claims at 1.

In response, Mr. Jones argues that evidence Defendants seek to preclude is relevant to his being subjected to a hostile work environment and to why he lost his position as a police officer. Pl.'s Opp'n at 24.

The Court agrees for now, albeit for a different reason.

To the extent that Defendants are seeking to preclude Mr. Jones from relitigating claims the Court has dismissed, the Court does not intend to allow evidence relating to those claims if it does not relate to the remaining claims. This inquiry, however, is one of relevance. And without the context of the particular evidence Defendants seek to preclude, the Court cannot categorically determine whether all mentions of the events leading up to Mr. Jones's reinstatement and PSA position assignment are irrelevant to his current claims.

Accordingly, the Court will deny without prejudice to renewal the [130] motion as it relates to Mr. Jones's reinstatement and PSA position assignment.

Second, Defendants move to preclude Mr. Jones from offering any exhibits or other evidence at trial that relates to any events that occurred before August 25, 2017—the date Mr. Jones began the PSA position. Defs.' Mot. Re: Events before August 25, 2017 at 1, 4.

In response, Mr. Jones argues that granting Defendants' motion would result in his claims being presented in a very narrow vacuum. Pl.'s Opp'n at 25.

The Court agrees, in part.

Defendants argue that the Court narrowed this claim to "proceed solely on Plaintiff's alleged experiences post-reinstatement and PSA assignment on or about August 25, 2017, provided that harassing conduct occurred within the actionable time period." Defs.' Mot. Re: Events before August 25, 2017 at 4. The Court expressly rejected this argument in its ruling and order on the parties' motions for summary judgment. *See* Order on Mots. for Summ. J. at 28 ("Defendants argue that much of the conduct that Mr. Jones relies on falls outside of the statute of limitations and therefore should not be considered. . . . The Court disagrees."). Indeed, in its order on Defendants' motions to dismiss, the Court noted that "the 300-day period beginning on February 8, 2020" is inapplicable to Mr. Jones's hostile work environment claim. Order on Mots. to Dismiss at 12–14. "[S]o long as one act contributing to the claim occurred within the statutory period . . . 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). As Mr. Jones claims that the hostile work environment has continued through the present, Compl. ¶ 62a, there is, at least, one act contributing to his claim that occurred within the statutory period. Thus, the entire time period of the hostile environment may be considered.

In his Complaint, Mr. Jones identifies the time period of the hostile environment as November 10, 2016, to the present. Compl. ¶ 62a. As a result, the Court will limit any evidence beyond foundational evidence to events occurring on and after November 10, 2016.

Accordingly, the Court will grant in part and deny in part the [141] motion.

In light of the Court's ruling on Defendants' [141] motion in limine, the Court will not consider any evidence beyond foundational evidence before November 10, 2016.

Defendants argue, without response from Mr. Jones, that the conduct and subsequent discipline of Ms. Cycenas and Ms. McElroy occurred in 2008 and 2009—before Chief Sansom was Chief of Police. Additionally, as it compares to the conduct and discipline of Mr. Jones, these events are beyond foundational evidence. Thus, the Court will preclude evidence pertaining to Ms. Cycenas and Ms. McElroy.

The MOA was executed on October 19, 2016, *see* Defs.' Mot. Re: MOA, Ex. A at 6, and thus the MOA and the events leading to Mr. Jones signing it, are outside of the time period of the hostile work environment claim. Witnesses may refer to the MOA only to the extent necessary to place Mr. Jones's hostile work environment claim in context.

The evidence regarding Mr. Stoldt occurred between 2003 and 2008. Defs. Resp. to Pl.'s Statement of Facts ¶ 53. Additionally, although testimony regarding Mr. Stoldt's admonition that Mr. Jones not associate with criminals may be probative of why Mr. Jones misused COLLECT, Mr. Jones's misuse of COLLECT is only relevant to the extent that it provides background as to Mr. Jones's decertification and current assignment. Thus, beyond what is necessary to build a foundation, the Court will exclude evidence related to Mr. Stoldt.

Defendants appealed the SBMA decision to the Connecticut Superior Court in 2014 and to the Appellate Court in 2016. Defs.' Mot. Re: Administrative Appeal at 6. The appeal was withdrawn with the execution of the MOA in October 2016. Defs.' Mot. Re: MOA, Ex. A at 6. Thus, the Court will exclude evidence of the administrative appeal as contributing to the hostile work environment.

Accordingly, the Court will grant Defendants' [120], [122], [128], and [129] motions.

Relevance and Undue Prejudice

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 ("Rule 401"). "Irrelevant evidence is not admissible." Fed. R. Evid. 402 ("Rule 402").

Relevant evidence is still subject to Federal Rule of Evidence 403, which provides that, although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 ("Rule 403"). Unfair prejudice under Rule 403 "may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citation omitted). To warrant excluding evidence under Rule 403, "[t]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Id.*

Mr. Jones moves to preclude Defendants' Exhibits 501–09 and 511, which regard Mr. Jones's arrests for disorderly conduct and criminal trespass in the first degree, a computer crime in the third degree, and the internal investigations related to these charges. Pl.'s Mot. Re: Pl.'s Arrests at 1. Mr. Jones argues that because he was never convicted of any of these charges, they are of no relevance to this action, or any probative value is substantially outweighed by unfair prejudice. *Id*. at 7. Mr. Jones also argues that the witness statements are hearsay for which no exception exists. *Id*. at 8.

In response, Defendants argue that evidence of Mr. Jones's arrests are relevant to showing that Defendants' reasons for terminating Mr. Jones were legitimate and non-discriminatory, and are not overly prejudicial. *Id*. at 9–10. Defendants also argue that the statements contained in the exhibits are nonhearsay or qualify under an exception to the rule against hearsay. *Id*. at 10–11.

The Court disagrees.

As relevance is a "very low standard," *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (citations and quotation marks omitted); *see also* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence."), the underlying facts of the arrest may be probative of whether Mr. Jones was terminated for a legitimate, nondiscriminatory reason. The Court, however, must still assess whether the probative value of such evidence is outweighed by the prejudicial effects it may have on Mr. Jones. *See* Fed. R. Evid. 403.

"In balancing potential prejudice against the probative value of the evidence under Rule 403, this Court may consider the 'availability of alternative means to present similar evidence.'" *Rosenthal v. City of New York*, No. 09 Civ. 5270 (WHP), 2011 WL 10901799, at *2 (S.D.N.Y. Sept. 6, 2011) (quoting *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008)). Mr. Jones does not argue against admitting evidence of his termination for violating the rules of the COLLECT system, only his resulting arrest. Pl.'s Reply at 2. Thus, there are alternate means of establishing Defendants' proffered purpose for the contested exhibits without introducing prejudicial evidence of Mr. Jones's arrests. *See, e.g.*, *Woolfolk v. Baldofsky*, No. 19-CV-3815 (WFK) (ST), 2022 WL 2600132, at *6 (E.D.N.Y. July 8, 2022) ("[E]vidence of Plaintiff's arrests may carry a 'grave risk of unfair prejudice, confusing the issues, and misleading the jury.'"

(quoting *Davis v. Velez*, 15 F. Supp. 3d 234, 252 (E.D.N.Y. 2014))); *U.S. v. Prejean*, 429 F.

Supp. 2d 782, 790 (E.D. La. 2006) (determining that although the facts leading up to the arrest

were directly relevant to the allegations at issue, "[e]vidence of the arrest itself would be

prejudicial at trial because the arrest did not lead to formal charges").

On the basis of Mr. Jones's representation that he is not arguing against the admission of

his misuse of the COLLECT system, the Court will grant Plaintiff's [112] motion to preclude

evidence of his arrests.

As a result, the Court need not determine whether statements contained within the arrest

and investigation records contain inadmissible hearsay at this time. The Court may reach this

issue during trial, should the need arise.

Turning to the Defendants' motions, Defendants first move to preclude Mr. Jones from

offering any evidence, testimony, argument, or comment regarding the following evidence under

Rules 401, 402, and 403: (1) an alleged promise Chief Sansom made to Mr. Jones to speak to

Alaric Fox about Mr. Jones's COLLECT certification, *see* Defs.' Mot. Re: Promise at 1; (2)

Plaintiff's POSTC and COLLECT certification other than for background evidence explaining

how he was assigned to the position of Police Services Aide, *see* Defs.' Mot. Re: Certifications

at 1; (3) an alleged conspiracy between Chief Sansom and Chief of Police for the Town of

Southington Chief John Daly, *see* Defs.' Mot. Re: Conspiracy; (4) economic damages, including,

but not limited to, lost wages, pension benefits and overtime, *see* Defs.' Mot. Re: Economic

Damages; (5) discriminatory conduct towards other African American officers, *see* Defs.' Mot.

Re "Me Too" Evidence; (6) Plaintiff's assignment to the PSA position and uniform, *see* Defs.'

Mot. Re: PSA Position; (7) the COLLECT recertification of Waterbury Officer Zentek, *see*

Defs.' Mot. Re: Zentek Certification; (8) Thomas Castanga as a comparator, *see* Defs.' Mot. Re:

Castagna; and (9) any testimony from Meredith Diette, Esq. Counsel for the Town of East

Hartford because her testimony is protected by attorney-client privilege and the work product

doctrine, Defs.' Mot. Re: Town Counsel as Witness at 4, and even if it was not, is not relevant.

*Id.* at 5.

      In response to Defendants' motion to preclude evidence regarding Chief Sansom's

alleged promise, Mr. Jones argues that evidence of the alleged promise, and Chief Sansom

allegedly breaking that promise, is relevant to "the circumstances that resulted in his being

relegated to the menial PSA position" and that such evidence demonstrates Chief Sansom's

alleged animus and discrimination toward Mr. Jones. *Id.* at 2.

      In response to Defendants' motion to preclude evidence pertaining to POSTC and

COLLECT certification other than for background evidence explaining how he was assigned to

the PSA position, Mr. Jones argues that John Daly, Scott Smith, George Battle, Darryl Hayes,

and William Tanner have provided testimony on this subject that shows Chief Sansom's alleged

animus and discriminatory bias towards Mr. Jones. Pl.'s Opp'n at 3. Specifically, Mr. Jones

argues that he "should be allowed to demonstrate the racially disparate treatment fostered by

Sansom with these witnesses." *Id.*

      Next, in response to Defendants' motion to preclude all evidence pertaining to economic

damages, Mr. Jones argues that the fact that he has been denied overtime is relevant to is hostile

work environment claim because the memorandum of agreement does not entirely exclude him

from overtime staffing. Pl.'s Opp'n at 7.

      As to Defendants' motion to preclude evidence of discrimination against Ian Allison,

Robert Jones, and Mark Allen, Mr. Jones argues that this evidence is relevant to establish

"similar discriminatory conduct that fostered the hostile work environment Plaintiff endured."
Pl.'s Opp'n at 10.

As to Defendants' motion to preclude evidence of Plaintiff's assignment to the PSA position and uniform as racial harassment, Mr. Jones argues that the requirement that he wear a different shirt is probative of a hostile work environment given his testimony that it made him feel alienated. Pl.'s Opp'n at 14.

As to Defendants' motion to preclude all evidence pertaining to the COLLECT recertification of Waterbury Officer Zentek, Mr. Jones argues that Chief Vernon Riddick's successful advocacy on behalf of Officer Zentek's recertification is probative of the fact that Chief Sansom did not "take all steps necessary" to assist Mr. Jones in his effort to receive recertification. Pl.'s Opp'n at 15.

As to Defendants' motion to preclude all evidence pertaining to Thomas Castagna as a comparator, Mr. Jones does not respond to the argument that Mr. Castagna is not a valid comparator. Mr. Jones instead argues that evidence of Mr. Castagna's alleged mistreatment is demonstrative of the hostile work environment. Pl.'s Opp'n at 19–20. In response, Defendants again argue that Mr. Castagna is not a valid comparator and Plaintiff should be precluded from offering evidence of Mr. Castagna's disciplinary history as evidence of disparate treatment. Defs.' Reply at 14–15.

Finally, as to the issue of the testimony from the Town Counsel, Mr. Jones argues that Attorney Diette's lack of preparation and advocacy on behalf of Mr. Jones shows Defendants' animus towards him, which perpetuated a hostile work environment.

The Court will address each of these issues in turn.

First, at trial, Mr. Jones must present specific evidence to support his allegations of a hostile work environment. While Mr. Jones argues that Chief Sansom's alleged refusal to "to do everything possible to get Plaintiff recertified" is the "fundamental basis for Plaintiff's hostile work claim," Pl.'s Opp'n at 2, the probative value of this alleged "promise" as to Mr. Jones's remaining alleged hostile work environment claim is marginal, at best. *Cf. Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) ("To establish a hostile work environment under Title VII, . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . . In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 23 (1993)). In any event, its introduction into this limited trial is likely to cause jury confusion, and therefore should be excluded under Rule 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues . . . ."); *see also United States v. Bermudez*, 529 F.3d 158 (2d Cir. 2008) ("District courts have broad discretion to balance probative value against possible prejudice . . . ." (citing *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004))).

Second, Chief Daly, Mr. Smith, Mr. Battle, and Mr. Hayes are not defendants in this action. Thus, any racially disparate treatment attributed to them is not at issue in this case, and the Court will preclude any evidence on the matter.

Third, although communications between Chief Sansom and Chief Daly while Mr. Jones tried to get recertified may bear on Mr. Jones's allegation that Chief Sansom was "orchestrating the denial of [his] reinstatement," a phone call in January 2022—nearly five years after Mr. Jones was denied recertification—does not. As a result, Defendants' motion *in limine* as to evidence of the 2022 phone call between Chief Sansom and Chief Daly and the related deposition testimony also will be granted. Defs.' Mot. Re: Conspiracy at 1.

Mr. Jones may, however, seek to elicit testimony from Chief Sansom and Chief Daly regarding communications they had during the recertification process. Although, during their depositions, both witnesses denied communicating during the recertification process, the Court cannot assume that they will not testify otherwise at trial. Defendants' will be free to raise the issue of inconsistent statements should the need arise.

Fourth, under paragraph 9f of the MOA, Mr. Jones is eligible for overtime assignments that do not require POSTC or COLLECT certification. Defs.' Mot. Re: MOA, Ex. A at 5 ("The Grievant shall not be eligible for any sworn officer minimum staffing patrol overtime and/or any other overtime or private duty assignments that require either POSTC or COLLECT certification, should the Grievant lack either."). Because Mr. Jones is alleging that the denial of overtime is a part of the allegedly hostile work environment created by Defendants, evidence that establishes the existence of such overtime assignments and that Defendants have precluded him from staffing those assignments due to racial animus is relevant to Mr. Jones's claims.

Fifth, while Judge Meyer  in *DeAngelis v. City of Bridgeport*, No. 3:14-cv-01618 (JAM), 2018 WL 429156, at *1 (D. Conn. Jan. 15, 2018), rightly noted that: "[T]he Supreme Court has instructed that the admissibility of 'me too' evidence should be subject to a careful, case-by-case, and fact-intensive determination that accounts for the likely probative value of the "me too"

evidence as against its potential for unfair prejudice[,]" even in that ruling, Judge Myer noted that "[s]imilar acts of discrimination may . . . support a discriminatory hostile work environment claim." *Id.*; *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) ("Because the crucial inquiry focuses on the nature of the workplace environment as a whole a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim. . . . Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 111–12 (2d Cir. 1997))), superseded by statute on other grounds as stated in *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 516 (S.D.N.Y. 2014).

As a result, if Mr. Jones can establish that, during the identified period, he had knowledge of hostility directed at Mr. Allison, Mr. Robert Jones, and Mr. Allen due to their race, *see Equal Emp. Opportunity Comm'n v. United Health Programs of America, Inc.*, 14-CV-3673 (KAM) (JO), 2020 WL 1083771, at *5 (E.D.N.Y. March 6, 2020) ("[A]n individual plaintiff who experiences a hostile work environment need not be the target of other instances of hostility to support her claim if the plaintiff has knowledge of hostility directed at other employees . . . ."), then that evidence is probative of the alleged hostile work environment.

Sixth, as to the picture of Mr. Jones in his PSA uniform issue, Defendants argue simply that the relevance of the evidence "is far outweighed by the potential for prejudice and confusion of the issues." Defs.' Mot. Re: PSA Position at 5. But an alleged order by Defendants to wear a different uniform, one that Mr. Jones testified made him feel alienated, is relevant to the hostile work environment Mr. Jones is claiming. Again, the jury will determine whether it accepts the

testimony and arguments regarding Mr. Jones's PSA uniform as evidence of a hostile work environment.

Seventh, as to the COLLECT recertification of Waterbury Officer Zentek, Mr. Jones intends to compare this evidence to Chief Sansom's alleged refusal to "to do everything possible to get Plaintiff recertified." Pl.'s Opp'n at 2, 15. As with the evidence of Chief Sansom's "promise," the introduction of Chief Riddick's advocacy for Officer Zentek's recertification into this limited trial is likely to cause jury confusion, and therefore should be excluded under Rule 403. *See* Fed. R. Evid. 403.

Eighth, as to Mr. Castagna allegedly being retaliated against on account of his speech on a matter of public concern, Pl.'s Opp'n at 19, this remaining claim in this case is about an allegedly hostile work environment on the basis of race. And while Mr. Jones is not restricted to evidence of offensive behavior towards those of his own race, *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 n.9 (2d Cir. 2000) ("To be actionable, offensive remarks or behavior need not 'be directed at individuals who are members of the plaintiff's own protected class.'"), he is restricted to evidence of behavior towards individuals because of their race. *See Powers v. Colonial Toyota, Inc.*, 2019 WL 13292030, at *2 (D. Conn. June 18, 2019) ("[T]o the undersigned's best knowledge, neither any circuit court of appeals nor the highest court has ever held that a plaintiff could advance a hostile work environment claim based *solely* on gender by submitting at trial evidence of discrimination aimed at co-workers based on race, color, religion, national origin, age or disability." (emphasis in original) (quoting *Gavenda v. Orleans Cty.*, No. 95-CV-0251E (SC), 2000 WL 1375590, at *5 (W.D.N.Y. Sept. 21, 2000). Thus, evidence of

Defendants' alleged discriminatory conduct toward Mr. Castagna on the basis of protected speech is not relevant to Mr. Jones's claims.[1]

Nine, as to any testimony from Meredith Diette, Esq. Counsel for the Town of East Hartford, even if not privileged or otherwise protected by attorney-client work product or a related doctrine,[2] any testimony regarding the Town Counsel's preparation for a proceeding is not plausibly related to Mr. Jones's remaining hostile work environment claim, and to the extent that it even remotely is, any such probative value of this claim is substantially outweighed by its prejudicial effect. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) ("Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" (quoting Fed. R. Evid. 403)). Indeed, the mere introduction of such issue is likely to "confuse the issues," or "mislead the jury" on the relevant issue at hand. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury . . . .").

Accordingly, consistent with the analysis above, the Court will the Court will grant Plaintiff's [112] motion; grant Defendants' [114] motion; grant in part and deny in part Defendants' [115] and [116] motions; deny Defendants' [123] motion; grant Defendants' [124] motion; deny Defendants' [117] motion; deny without prejudice to renewal at trial Defendants' [119] motion; grant Defendants' [126] motion; and grant Defendants' [121] motion.

---

[1] As a result, the Court need not reach the issue of whether Plaintiff's counsel may introduce evidence related to another client.

[2] Mr. Jones's argument that East Hartford's Town Counsel had some ethical responsibility to him, and therefore, to the extent that there was an issue of privilege, it was Mr. Jones's to waive, is without merit. As counsel for East Hartford, there is no—nor could there plausibly be—an attorney-client relationship between Mr. Jones and Meredith Diette. *See, e.g.*, *In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1093 (9th Cir. 2016) ("In no instance, as far as we are aware, has a former officeholder successfully claimed that a government staff lawyer discussing a matter relating to official business was representing the officeholder personally during a conversation had while both were government employees.").

Hearsay

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *U.S. v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id*. (citing Fed. R. Evid. 802).

Defendants move to preclude evidence of the Union blog posted by Francesco Iacono and a related email and petition from Christopher Arace, arguing that the proposed exhibits are hearsay. Defs.' Mot. Re: Union Blog Post at 1, 6. In response, Mr. Jones argues that because he deposed Mr. Arace and intends to call him as a witness, the email and petition are authenticated. Pl.'s Opp'n at 17. Mr. Jones also argues that this evidence will show that Chief Sansom was aware of the posts about racism among his administration and refused to investigate or discipline. *Id*. In other words, Mr. Jones argues that these statements are not hearsay as they will not be admitted for the truth of the matter.

Defendants also move to preclude Mr. Jones from offering the EHPD internal affairs history, arguing that it is hearsay, violates the best evidence rule, and is irrelevant and prejudicial. Defs.' Mot. Re: IA History at 4–5. The IA history Mr. Jones seeks to admit is depicted in a chart and summarizes "discipline issued to members of the police department, and their race, after January 1, 2014." *Id*. at 1. Defendants argue that the chart is insufficient to determine whether anyone captured by the chart is similarly situated to Mr. Jones. *Id*. at 2.

In response, Mr. Jones argues that the chart is generated by Defendants and used in the normal course of their business, thus satisfying an exception to the rule against hearsay. Pl.'s Opp'n at 8. Mr. Jones also seems to argue that the purpose of the chart is not for the truth of the matters within it. *See id*. ("The chart does not 'specifically prove matters within it' but rather is a

report generated by Defendants that shows the internal affairs cases and dispositions from the time Chief Sansom became chief of police.").

The Court will address both of these issues in turn.

As to the first issue, deposing and calling a witness to testify to the contents of an out-of-court statement does not make hearsay admissible. *U.S. v. Abrams*, 543 F. Supp. 1184, 1192 (S.D.N.Y. 1982) ("[T]he opportunity to cross-examine a declarant does not render inadmissible hearsay statements admissible . . . ." (citing *United States v. Check*, 582 F.2d 668, 680 (2d Cir. 1978))). But Defendants' knowledge of this evidence and any subsequent failure to act may bear on whether Defendants allowed a hostile work environment. *See Bentley v. AutoZoners*, LLC, 935 F.3d 76 (2d Cir. 2019) (noting that a Title VII plaintiff may establish negligence "if a co-worker who is not a supervisor has created the hostile environment, and the employer, upon becoming aware of the misconduct, fails to remedy it" (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013))).

In this case, the statements that Mr. Jones claims are racist or racially charged—Mr. Arace's e-mail and petition—would not be admitted for their truth, but rather for the fact that they contributed to a hostile environment that Defendants failed to remedy. Because Defendants have denied knowledge of this information, *see* Defs.' Mot. Re: Union Blog Post, Ex. H at 3–8, and therefore argue that they had no responsibility to take any action, the credibility determination as to the plausibility of this lack of knowledge is an issue for the jury to decide. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("It is a well-recognized principle of our trial system that 'determining the weight and credibility of [a witness's] testimony . . . . belongs to the jury . . . .'" (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891))).

Mr. Iacono's blog post, on the other hand, is not alleged to be conduct for which Defendants should have intervened. Mr. Jones categorizes the blog post as "calling out the administration for racially disparate treatment." Pl.'s Opp'n at 17. This is hearsay for which Mr. Jones has not identified an exception. Thus, Mr. Jones will be precluded from introducing Mr. Iacono's blog post. To the extent, however, that Mr. Iacono "has personal knowledge," Fed. R. Evid. 602, of Defendants' treatment of African American officers, Mr. Jones will not be precluded from seeking to introduce such testimony.

As to the second issue, evidence that other employees have been subjected to a hostile work environment on the same basis as Plaintiff may be considered as evidence of a hostile work environment. *Cruz*, 202 F.3d at 570. Evidence that employees, who are not members of Plaintiffs' protected class, have been treated more favorably than Plaintiff is also permissible. *See Coudert v. Janney Montgomery Scott*, LLC, 2005 WL 1563325, at *11 (D. Conn. July 1, 2005) (stating that a plaintiff claiming a hostile work environment may offer direct comparative evidence about how the alleged harasser treated members of both the minority and majority groups) (citing *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 80–81 (1998)). Thus, evidence as to the disposition of internal affairs cases during the period that Mr. Jones alleges to be a hostile work environment may be relevant to the present claims.

As to whether this evidence may be admitted as a business record, the document must have been made near the time of the recorded event by someone with knowledge and must have been kept in the course of regularly conducted business activity. Fed. R. Evid. 803(6)(A)–(B). In addition, it must have been the regular practice of that business activity to make the document. Fed. R. Evid. 803(6)(C). There is nothing in this record to suggest that any of these standards can be met, much less by Mr. Jones. *See Petschauer v. U.S.*, No. 13-CV-6335 (NGG) (VMS), 2016

WL 1271035, at *4 (E.D.N.Y. Mar. 29, 2016) ("A business record is a record of some act, event, condition, opinion, or diagnosis, which was: (1) made at or near the time at which the event occurred; (2) kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (3) part of a regular practice to make that record; and (4) ensured that each of those requirements has been met by the testimony of the custodian or another qualified witness. . . . Absent such evidence, the report cannot be admitted." (citing Fed. R. Evid. 803(6); *S.E.C. v. Credit Bancorp. Ltd.*, No. 99-CV-1395 (RWS), 2000 WL 968010, at *9 (S.D.N.Y. July 3, 2000); *U.S. v. Abrams*, 357 F.2d 539, 546 (2d Cir. 1966))). Nevertheless, rather than summarily exclude this proffered evidence now—although there has been no showing whatsoever of the content of this alleged document—the Court will reserve further judgment on this potential evidence until the time of trial. *See Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 185 (D. Conn. 2022) ("The court also retains discretion to reserve judgment on some or all motions in limine until trial so that the motions are placed in the appropriate factual context." (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996))).[3]

 Accordingly, consistent with the analysis above, the Court will grant in part and deny in part Defendants' [125] motion, and will deny without prejudice to renewal Defendants' [118] motion.

---

[3] Similarly, Defendants raise an argument, without analysis, that the IA history chart violates the best evidence rule. Defs.' Mot. Re: IA History at 4. Without context as to the creation of the chart, the Court cannot determine whether this rule even applies here. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content . . . ."); *but see* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

Disclosure Requirements for Treating Physicians

"[A] treating physician need not be explicitly designated as an expert witness under the Federal Rules of Civil Procedure." *Barack v. American Honda Motor Co., Inc.*, 293 F.R.D. 106, 108 (D. Conn. Apr. 18, 2013) (citing *Reilly v. Revlon, Inc.*, 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians do not need to be designated as experts in order to testify. Furthermore, treating physicians, like all other fact witnesses, may give opinion testimony about plaintiff's condition and emotional damages pursuant to Fed. R. Ev. 702.")).

"Although not required to provide a written expert report under Rule 26 (a)(2)(B), a party seeking to use a treating physician must disclose more than just the identity of the treating physician. '[I]f the witness is not required to provide a written report [under Rule 26(a)(2)(B), the witness's] disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.'" *Barack*, 293 F.R.D. at 108 (citing Fed. R. Civ. P. 26(a)(2)(C)). "Rule 26(a)(2)(C) therefore clearly requires treating physicians to, at a minimum, produce and disclose 'summaries' of the facts and opinions to which the physician expects to testify." *Id.*

Defendants move to preclude Mr. Jones from calling John Behling, LCSW or Phyllis Spallone, LCSW, his treating therapists, offering any evidence regarding diagnoses, treatments, or counseling from his treating physicians or Stephen Atkins, M.D., or introducing medical records of treatment providers he did not disclose for failure to comply with Federal Rule of Civil Procedure 26(a)(2). Defs.' Mot. Re: Expert Testimony at 1. As to Ms. Spallone, Defendants argue that Mr. Jones's disclosure was inadequate as it lacked any information as to the subject matter of her testimony and the basis for any facts or opinions she would offer. Defs.' Mot. Re:

Expert Testimony at 11. Defendants also note that, unlike with Mr. Behling's records, they did not receive any treatment records from Ms. Spallone. *Id.* at 10.

As to Mr. Behling, Mr. Jones argues that he has disclosed all medical notes, diagnosis, and treatment records, and that a "plain reading of Mr. Behling's treatment notes makes it clear what the 'subject matter' of his testimony will be." Pl.'s Opp'n at 21. Mr. Jones does not respond to Defendants' claims regarding the inadequate disclosure of Ms. Spallone and counsel represented that he does not intend to call Ms. Spallone as a witness.

The Court agrees with Defendants, in part.

While the treatment notes may make the subject of Mr. Behling's testimony "clear," that does not excuse Mr. Jones from the procedural requirement that his disclosure "contain *both* the subject matter about which the witness will testify *and* a summary of the facts and opinions upon which he or she will rely." *Olutosin v. Gunnsett*, No. 14-cv-00685 (NSR), 2019 WL 5616889, at *3 (S.D.N.Y Oct. 31, 2019) (emphasis in original).

Mr. Jones did provide Defendants with a statement that Mr. Behling "will testify about his diagnosis, treatment and counseling of Plaintiff," *see* Joint Trial Memo., ECF No. 113 at 16, however this is insufficient to satisfy Rule 26(a)(2)(C). *See Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements*, 919 F. Supp. 2d 297, 300 (W.D.N.Y. 2013) ("Although less is required in a disclosure of such witnesses than of those covered by Rule 26(a)(2)(B), . . . a mere list of names, accompanied by three-word descriptions of the subject matter of their testimony, is plainly not enough."). Thus, Mr. Jones has failed to disclose the requisite information pursuant to Rule 26(a)(2)(C).

"If a party fails to disclose the requisite information pursuant to Rule 26(a), 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at

a trial, unless the failure was substantially justified or is harmless.'" Fed. R. Civ. P. 37 (c)(1). "In considering whether to exclude improper or untimely evidence, a district court should consider '(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the evidence; (3) the prejudice suffered by the opposing party as a result of having to respond to the new evidence; and (4) the possibility of a continuance.'" *Ziegenfus v. John Veriha Trucking*, No. 10 Civ. 5946 (RJS), 2012 WL 1075841, at *6 (S.D.N.Y. Mar. 28, 2012) (quoting *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 296–97 (S.D.N.Y. 2001)).

Mr. Jones does not explain the failure to disclose the requisite information, however, at oral argument on this motion, his counsel represented that Mr. Behling's testimony is important to his case as only Mr. Behling can testify to Mr. Jones's diagnoses. *See* Minute Entry, ECF No. 157 (Oct. 24, 2023).

Regarding the prejudice suffered, defense counsel represented that, due to the insufficient disclosure, there was not an opportunity to depose Mr. Behling before the close of discovery. Although through the efforts of defense counsel, Defendants did have Mr. Behling's treatment notes ahead of the close of discovery.

As a result, the prejudice to the Defendants can be cured by reopening discovery to allow for Defendants to depose Mr. Behling. *See Hardnett-Majette v. Nat'l Railroad Passenger Corp.*, 2017 WL 2838159, at *3 (N.D.N.Y. June 30, 2017) (citing *Chart v. Town of Parma*, No. 10-CV-6179, 2014 WL 4923166, at *27 (W.D.N.Y. Sept. 30, 2014) ("[M]uch of the prejudice to the Town may be cured through reopening expert discovery.")).

As to Dr. Atkins's evaluation of Mr. Jones through the testimony of Mr. Behling, Pl.'s Opp'n at 21, Mr. Jones may only offer Mr. Behling as a treating therapist, rather than as an expert witness, Mr. Behling may not introduce information provided by other physicians. *See*

*Barack*, 293 F.R.D. at 109 ("[T]he treating physician may not introduce information provided by other physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor." (quoting *Spencer v. Int'l Shoppes, Inc.*, 2011 WL 4383046, at *4 (E.D.N.Y. Sept. 20, 2011))).

As a result, the Court will deny the [127] motion as to Mr. Behling, amend the discovery deadline to December 15, 2023, only as to Mr. Behling, but grant the motion as to Dr. Atkins, and Ms. Spallone.

## IV.    CONCLUSION

For the foregoing reasons, the [118], [119], and [130] motions are **DENIED without prejudice** to renewal at trial.

The [117] and [123] motions are **DENIED**.

The [127] motion is **GRANTED** in part and **DENIED** in part. Discovery as to Mr. Behling is extended until December 15, 2023.

The [115], [116], [125], and [141] motion is **GRANTED** in part and **DENIED** in part.

The [112], [114], [120], [121], [122], [124], [126], [128], and [129] motions are **GRANTED**.

**SO ORDERED** at New Haven, Connecticut, this 10th day of November, 2023.

　/s/ Victor A. Bolden　　　　　　　
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE