UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUMA JONES,<br>    *Plaintiff*,<br><br>v.<br><br>SCOTT SANSOM, CHIEF OF POLICE,<br>MACK HAWKINS, DEPUTY CHIEF OF<br>POLICE, and TOWN OF EAST HARTFORD,<br>    *Defendants*. | No. 3:21-cv-00442 (VAB) |

**RULING AND ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL**

Juma Jones ("Mr. Jones" or "Plaintiff") sued then-Chief of Police of the Town of East Hartford Police Department, Scott Sansom ("Chief Sansom"), then-Deputy Chief of Police of the Town of East Hartford Police Department, Mack Hawkins ("Deputy Chief Hawkins"), and the Town of East Hartford (the "Town," collectively the "Defendants") for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 1983; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*. Compl., ECF No. 1 (Mar. 30, 2021) ("Compl.").

Following a three-day trial, the jury unanimously found that Mr. Jones had not proven by a preponderance of the evidence that the Town of East Hartford created or maintained a race-based hostile work environment in violation of Title VII. Verdict Form at 1, ECF No. 195 (Jan. 25, 2024) ("Verdict").

Now, Mr. Jones has renewed his motion for judgment as a matter of law and jointly moves for a new trial. Mot. for J. as a Matter of Law and Mot. for New Trial, ECF No. 198 (Feb. 28, 2024) ("Mot.").

1

For the reasons outlined below, the renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and motion for a new trial under Federal Rule of Civil Procedure 59 are **DENIED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The Court assumes familiarity with the factual and procedural background, and will only reiterate what is necessary to address Mr. Jones's pending motions.

On March 30, 2021, Mr. Jones filed a Complaint stating nine causes of action: (1) racial discrimination and creation of a hostile work environment in violation of Title VII as to East Hartford ("Count One"); (2) retaliation in violation of Title VII as to East Hartford ("Count Two"); (3) discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment ("Count Three"); (4) denial of due process in violation of the Due Process Clause of the Fourteenth Amendment ("Count Four"); (5) discrimination and denial of due process in violation of the Fourteenth Amendment as to East Hartford ("Count Five"); (6) discrimination, retaliation, and creation of a hostile work environment in violation of CFEPA ("Count Six"); (7) aiding and abetting in violation of CFEPA as to then-Chief Sansom ("Count Seven"); (8) aiding and abetting in violation of CFEPA as to then-Deputy Chief Hawkins ("Count Eight"); and breach of contract ("Count Nine"). Compl., ECF No. 1 (Mar. 30, 2021) ("Compl.").

On May 21, 2021, Defendants filed a motion to dismiss all nine counts on the grounds that Mr. Jones's Complaint failed to state a claim upon which relief could be granted, *see generally* First Mot. to Dismiss, ECF No. 19 (May 21, 2021), and on August 3, 2021, Defendants filed a second motion to dismiss on the ground that the Court did not have subject matter jurisdiction over Mr. Jones's breach of contract claim in Count Nine of the Complaint, *see generally* Second Mot. to Dismiss, ECF No. 24 (Aug. 3, 2021).

On March 31, 2022, the Court issued a Ruling and Order granting in part and denying in part Defendants' motion to dismiss for failure to state a claim and granting Defendants' motion to dismiss for lack of subject matter jurisdiction. Ruling and Order on Mots. to Dismiss, ECF No. 50 (Mar. 31, 2022).

The Court dismissed Mr. Jones's wrongful termination, demotion, denial of promotion, and retaliation claims under Title VII and CFEPA in Counts One, Two, and Six as time barred, *id*. at 12–14; dismissed the equal protection and due process claims in Counts Three, Four, and Five based on any acts occurring before March 30, 2018, as time barred, *id*. at 20, and against then-Chief Sansom in his official capacity and against then-Deputy Chief Hawkins in his official and individual capacities, *id*. at 18–19, 27; and dismissed the breach of contract claim in Count Nine for lack of subject matter jurisdiction, *id*. at 31–32.

As a result of the Court's Ruling and Order on Defendants' motions to dismiss, Mr. Jones's case was narrowed to the hostile work environment claim under Title VII and CFEPA, *id*. at 16; the constitutional claims based on allegations that occurred after March 30, 2018, except as to then-Chief Sansom in his official capacity and then-Deputy Chief Hawkins in his individual and official capacities, *id*. at 17–27; and the CFEPA aiding and abetting claims, *id*. at 29.

On June 15, 2022, Mr. Jones moved for summary judgment on all claims. Pl.'s Mot. for Summ. J., ECF No. 68 (June 15, 2022).

On July 15, 2022, Defendants filed a cross motion for summary judgment. Defs.' Mot. for Summ. J., ECF No. 77 (July 15, 2022).

On January 27, 2023, the Court issued a Ruling and Order denying Mr. Jones's motion for summary judgment and granting in part and denying in part Defendants' motion for summary judgment. Ruling and Order on Mots. for Summ. J., ECF No. 87 (Jan. 27, 2023).

The Court granted summary judgment in favor of Defendants as to Mr. Jones's constitutional claims, including his equal protection claim, *id.* at 39–42, procedural due process claim, *id.* at 44–46, and *Monell* claim, *id.* at 46–47.

As a result of the Court's Ruling and Order on the parties' motions for summary judgment, Mr. Jones's case was narrowed further to the Title VII and CFEPA claims against the Town, *id.* at 20–31, and the CFEPA aiding and abetting claims against then-Chief Sansom and then-Deputy Chief Hawkins, *id.* at 34–36.

Jury selection in this case began on January 23, 2024. Min. Entry, ECF No. 188 (Jan. 23, 2024).

On January 25, 2024, at the conclusion of Mr. Jones's case, both parties moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, which the Court took under advisement. Tr. Vol. I at 421 ¶¶ 17–23, ECF No. 201 (Mar. 11, 2024) ("Tr. Vol. I").

On the same day, Defendants filed a memorandum of law in support of their motion under Rule 50(a). Def. Mot. for J. as a Matter of Law, ECF No. 190 (Jan. 25, 2024).

The jury then returned a verdict in favor of Defendants. Verdict at 1.

On January 26, 2024, the Court denied as moot Defendants' motion for judgment as a matter of law in light of the jury's verdict. Order, ECF No. 191 (Jan. 26, 2024).

On February 28, 2024, Mr. Jones filed a renewed motion for judgment as a matter of law and a motion for a new trial. Mot.; Mem. of L. in Supp. of Mot. for J. as a Matter of Law and Mot. for New Trial, ECF No. 198-1 (Feb. 28, 2024) ("Mem").

On March 20, 2024, Defendants filed a memorandum of law in opposition to Mr. Jones's motion for judgment as a matter of law and new trial. Mem. of L. in Opp'n to Pl.'s Mot. for J. as a Matter of Law and Mot. for New Trial, ECF No. 202 (Mar. 20, 2024) ("Opp'n").

On March 27, 2024, Mr. Jones filed a reply in support of his motion for judgment as a matter of law and new trial. Reply in Supp. of Mot. J. as a Matter of Law and Mot. for New Trial. Reply, ECF No. 203 (Mar. 27, 2024) ("Reply").

## II. STANDARD OF REVIEW

### A. Judgment as a Matter of Law

The standard governing a motion for judgment as a matter of law under Federal Law of Civil Procedure 50 is "appropriately strict." *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988). The motion "'may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015) (quoting *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)).

The court must deny the motion "'unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir.

2004) (quoting *Nadel v. Isaksson*, 321 F.3d 266, 272 (2d Cir. 2003)); *see also Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) ("'[T]he same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50.'" (quoting *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998))).

### B. Motion for New Trial

A district court may order a new trial under Federal Rule of Civil Procedure 59 if an erroneous evidentiary ruling affected a substantial right of the moving party. *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012) ("[A]n erroneous evidentiary ruling warrants a new trial only when 'a substantial right of a party is affected,' as when 'a jury's judgment would be swayed in a material fashion by the error.'" (quoting *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007))).

The standard governing a motion for a new trial is "less stringent" than the standard governing a motion for judgment as a matter of law, in that (1) the court may order a new trial even if there is substantial evidence supporting the jury's verdict, and (2) the court may weigh the evidence and need not view it in the light most favorable to the party that prevailed at trial. *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003). Still, the court may only grant a motion for a new trial "if the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice," or "if substantial errors were made in admitting or excluding evidence." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014) (internal citations and quotation marks omitted).

## III.    DISCUSSION

Mr. Jones argues that the evidence in this case did not permit a reasonable conclusion in favor of Defendants, and thus the Court should direct a verdict in his favor. Mem. at 4. Alternatively, Mr. Jones argues that, because the verdict is against the weight of the evidence and was entered as a result of prejudice, misapplication of the Court's instructions, or other error, the Court should set aside the verdict and order a new trial. *Id*.

The Court will address each argument in turn.

### A.    Renewed Motion for Judgment as a Matter of Law

"It is well settled that Rule 50(b) relief is available only if a party 'sought such relief before the jury retired to deliberate under Fed. R. Civ. P. 50(a)(2), and limits the permissible scope of the later motion to those grounds specifically raised in the prior motion for [judgment as a matter of law].'" *Greenaway v. Cnty. of Nassau*, 327 F. Supp. 3d 552, 561 (E.D.N.Y. 2018) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001)) (alteration in original).

"[A] motion for judgment as a matter of law [under Rule 50(a)] 'must at least identify the specific element that the defendant contends is insufficiently supported.'" *Id*. (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998)).

"[I]f an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice.'" *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986)). "'Manifest injustice exists where a jury's verdict is wholly without legal support.'" *Greenaway*, 327 F. Supp. 3d at 562 (quoting *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014)).

In his motion under Rule 50(b), Mr. Jones argues that the weight of the evidence presented at trial established that Defendants created a racially motivated hostile work environment. Mem. at 6–9.

In response, Defendants argue that Mr. Jones's claims under Rule 50(b) are limited to review for manifest injustice because he did not raise them under Rule 50(a). Opp'n at 25–26. Defendants also argue that Mr. Jones cannot establish manifest injustice because the jury's verdict was amply supported by the record evidence. *Id*. at 26.

The Court agrees, however, it will address Mr. Jones's claims on the merits.

At the conclusion of Mr. Jones's case, the parties made the following oral motions under Rule 50(a):

> MS. ZELMAN: I'm going to move for judgment as a matter of law under Rule 50.
>
> THE COURT: Okay.
>
> MR. BREWER: The plaintiff makes the same motion, Your Honor, just for the record.
>
> THE COURT: All right. I will take them both under advisement. Did you want to expound on that?
>
> MS. ZELMAN: I'm sorry?
>
> THE COURT: Did you want to expound on that, or I can take it all under advisement.
>
> MS. ZELMAN: Your Honor, we do have a brief ready to be filed.
>
> THE COURT: Well, okay, fine. You can file the brief.
>
> MR. BREWER: I don't have a brief, Judge. They beat me again.
>
> THE COURT: You can file a brief. All right. So then I will just -- if you don't have a brief, I will just take it all under advisement then.

Tr. Vol. III at 421:17–422:11, ECF No. 201 (Mar. 11, 2024) ("Tr. Vol. III").

Mr. Jones argues that, in failing to articulate the grounds on which he moved under Rule 50(a), he relied on the Court's statement that it would take the motion under advisement, and that the Court inquired as to whether Defendants wanted to expound on their motion but did not seek the same from Mr. Jones. Reply at 5–6.

The Court's inquiry as to whether counsel wanted to expound on their Rule 50(a) motions was not expressly directed at a single party, and both parties' counsel responded. Defendants' counsel responded that they had "a brief ready to be filed" and Plaintiff's counsel responded, "I don't have a brief, Judge. They beat me again." Any brief that counsel intended to file under Rule 50(a) would have had to been filed "before the case [was] submitted to the jury" as required by Rule 50(a)(2).

In any event, the Court will review Mr. Jones's Rule 50(b) motion to determine whether a "complete absence of evidence supporting the verdict" existed, rather than for manifest injustice.[1]

Mr. Jones argues that the weight of the evidence presented at trial established that Defendants created a racially motivated hostile work environment by their (1) refusing to support Mr. Jones's reinstatement as a police officer; (2) creating the Police Service Aide ("PSA") position for Mr. Jones; and (3) ordering Mr. Jones not to leave the building. Mem. at 6–9.

In arguing that the jury's verdict is against the weight of the evidence, Mr. Jones has missed the mark in establishing a complete absence of evidence supporting the verdict. Indeed,

---

[1] Although the Court may not properly grant a Rule 50(b) motion except to prevent manifest injustice under this circumstance, *see Edelman v. NYU Langone Health Sys.*, No. 21-CV-502 (LJL), 2023 WL 8892482, at *6 (S.D.N.Y. Dec. 26, 2023) ("'The law is pellucid that a party's failure to move under Rule 50(a) has consequences. If that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice.'" (quoting *ING Glob.*, 757 F.3d at 97)), Mr. Jones's Rule 50(b) motion does not meet either of the two standards, and thus will be denied. As such, the Court's analysis under the lesser standard does not disturb the mandate that a Rule 50(b) motion here could only be granted to prevent manifest injustice.

9

there is evidence supporting the jury's verdict—namely, the testimony that Defendants did act to support Mr. Jones's recertification,[2] the testimony that Mr. Jones was assigned to the PSA position not because of his race, but rather because he was not certified as a police officer,[3] and the testimony that then-Deputy Chief Hawkins did not order Mr. Jones not to leave the building.[4] *See Hutchinson v. Grace*, No. 19 CIV. 270 (AKH), 2022 WL 1154347, at *2 (S.D.N.Y. Apr. 19, 2022) (concluding that the plaintiff "fail[ed] to establish that relief [was] necessary to prevent manifest injustice" where the plaintiff failed to acknowledge the evidence supporting the jury's verdict and failed to "call into question the legal support for the jury's verdict"). And as to Mr. Jones's claim that the evidence at trial proved that he endured daily "potential physical hostility . . . at the front lobby of the police department," Mem. at 7, he disregards that there was testimony that Mr. Jones sits in a secured room behind bullet proof glass, no different from the civilian records clerks—of various races—who, like Mr. Jones, are not armed.[5]

Thus, there was not a "complete absence of evidence supporting the verdict . . . [,]" nor was the evidence in favor of Mr. Jones "so overwhelming that reasonable and fair minded

---

[2] Tr. Vol. II at 251:11–252:1, ECF No. 200 (Mar. 11, 2024) ("Tr. Vol. II") ("Q. Was there a time when it became necessary for you to help Mr. Jones become recertified? A. Yes. Q. What did you do to help him? A. I attended a meeting in Middletown State Police for his COLLECT hearing to try to get his COLLECT certification back."); Tr. Vol. III at 402:6–21 ("[W]e went to his hearings. We advocated on his behalf. We sent a multitude of letters on his behalf to get him recertified, and I was denied multiple times on those things.").

[3] Tr. Vol. II at 236:9–25 ("Q. Was Mr. Jones's assignment to the position of police services aid because of his race or his color? A. No. Q. Why was he assigned to that position? A. Because we had to take him back, so we had to create a position for him within the police department, within the union. Q. Why couldn't he be a police officer when you took him back? A. Because he was not certified as a police officer. Q. And it's the State of Connecticut that certifies police officers, correct? A. Yes. Q. You don't play any role in that, right? A. No.").

[4] Tr. Vol. II at 250:1–6 ("A. I let him know if he doesn't feel comfortable leaving the building, don't leave the building. And I didn't make him do the mail run. Q. It wasn't a direct order not to leave the building, right? A. No.").

[5] Tr. Vol. II at 246:3–9, 247:5–248:13, 248:17–24 ("Q. So Mr. Jones would be behind that glass? A. Yes. Q. Okay. And what type of glass is that? A. That's -- the front glass here is bulletproof glass. Q. And the whole room is secure, correct? A. Yes. . . . I know we have -- there is a button in there that locks. I'm pretty sure it locks this door, if my memory serves me correct. It's been a while. I don't go in there too often, but, like I said, you cannot access this door unless somebody opens it from the opposite side or, if you see this a little dot right here, it's key fob access for only staff.").

[persons] could not arrive at a verdict against [him].'" *Wiercinski*, 787 F.3d at 112 (second alteration in original).

Accordingly, the Court will deny Mr. Jones's motion for judgment as a matter of law.

### B. Motion for a New Trial

"A new trial on the basis of evidentiary error should not be granted unless 'the introduction of inadmissible evidence was a clear abuse of discretion and was . . . clearly prejudicial to the outcome of the trial [such that] the verdict is a miscarriage of justice.' An evidentiary ruling is a clear abuse of discretion where it is based on 'an erroneous view of the law or on a clearly erroneous assessment of the evidence, or [where the court] rendered a decision that cannot be located within the range of permissible decisions.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 628 (S.D.N.Y. 2018) (quoting *Vill. of Freeport v. Barrella*, 814 F.3d 594, 611 (2d Cir. 2016); *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997)).

"Courts in this Circuit have held that, to obtain a new trial on the ground of erroneous evidentiary rulings, 'a litigant must do more than merely voice a disagreement with the court's evidentiary rulings. . . .'" *Williams v. Marinelli*, No. 3:13-CV-1154 (MPS), 2017 WL 11473740, at *14 (D. Conn. Feb. 8, 2017) (quoting *Litras v. Long Island R.R.*, No. 02-CV-5168 (SLT), 2006 WL 1455466, at *11 (E.D.N.Y. May 23, 2006)). "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2022 WL 369012, at *2 (D. Conn. Feb. 8, 2022), *aff'd*, No. 21-2012, 2023 WL 7103275 (2d Cir. Oct. 27, 2023) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Mr. Jones argues that he should be granted a new trial because the Court improperly (1) set a cut-off date regarding evidence of Defendants' conduct and excluded evidence of an allegedly racially hostile act from 2008; (2) excluded evidence of other instances of hostility towards African American officers and severely diminished Mr. Jones's claims; and (3) excluded evidence of a racially hostile e-mail following a union blog post. Mem. at 8–10.

In response, Defendants argue that Mr. Jones is not entitled to a new trial because he cannot establish that the Court abused its discretion when it issued its rulings on these matters. Opp'n at 37.

The Court agrees.

In its Ruling and Order on the parties' various motions *in limine*, the Court, emphasizing that the "remaining claim in this case is about an allegedly hostile work environment on the basis of race[,]" Ruling and Order on Mots. in Limine at 19, ECF No. 158 (Nov. 10, 2023) ("Ruling and Order on Mots. in Limine"), addressed each of the evidentiary issues that Mr. Jones raises.

1. *The Time Period*

In its Ruling and Order, the Court agreed with Mr. Jones that "so long as one act contributing to the claim occurred within the statutory period . . . 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Ruling and Order on Mots. in Limine at 9 (quoting *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). And because Mr. Jones identified the time period of the hostile work environment as November 10, 2016, to the present, Compl. ¶ 62a, the Court considered acts—unless otherwise excluded—occurring during that period. *See Drees v. Cnty. of Suffolk*, No. 06-CV-3298 (JFB) (ETB), 2007 WL 1875623, at *9 (E.D.N.Y. June 27, 2007) (considering the entire period of the hostile work environment as alleged in the plaintiff's Complaint).

Mr. Jones argues that evidence—which the Court excluded, Ruling and Order on Mots. in Limine at 10—of Lieutenant Stoldt referring to Officer Mark Allen as "boy" in 2008 would have demonstrated the racial element of Defendants' conduct. Mem. at 9. Even if Mr. Jones had initially alleged a broader time period during which he experienced a hostile work environment, he still would not have been able to successfully establish that this remote incident, which occurred prior to then-Chief Sansom and then-Deputy Chief Hawkins joining the East Hartford Police Department,[6] was a "part of the same actionable hostile work environment practice" that Mr. Jones currently alleges. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002)); *see also Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002), *aff'd*, 76 F. Appx. 366 (2d Cir. 2003) (concluding that alleged discriminatory acts were "not subject to the continuing violation doctrine" where they were "decisions made by different supervisors over a period of many years"); *De Abreu v. Johnson Controls Fire Prot. LP*, No. 18-CV-2686 (JMA) (ARL), 2021 WL 4409716, at *11 (E.D.N.Y. Sept. 27, 2021) ("Despite the similarity between the 2013 and 2017 incident, the earlier event is too remote in time, without intervening conduct by Kannett, to warrant application of the continuing violation doctrine.").

In light of this, Mr. Jones has not provided any basis for how the Court accepting the time period he identified suggests an erroneous view of the law or assessment of the evidence. Thus, the Court did not err in considering the entirety of the hostile work environment identified by Mr. Jones and excluding evidence from 2008.

---

[6] Tr. Vol. II at 187:16–20, 353:4–6.

### 2. Other Instances of Racial Hostility

At trial, Mr. Jones sought to introduce testimony from a co-worker alleged to have been disciplined by then-Chief Sansom and alleged to have discussed the work environment with Mr. Jones. Tr. Vol. II at 152:13–153:3.

In its Ruling and Order, the Court held that, "if Mr. Jones [could] establish that, during the identified period, he had knowledge of hostility directed at Mr. Allison, Mr. Robert Jones, and Mr. Allen due to their race, then that evidence [would be] probative of the alleged hostile work environment." Ruling and Order on Mots. in Limine at 18 (citation omitted).

In a proffer, Mr. Allison testified that he was disciplined by then-Chief Sansom and was retiring as a result of the discipline. Tr. Vol. II at 155:19–158:15. The Court then excluded Mr. Allison's testimony as insufficiently probative of the hostile work environment that Mr. Jones alleged. *Id*. at 160:2–19 ("I don't understand how anything that happened to this individual could be probative of any of the things that Mr. Jones has testified he endured. . . . based on that, I don't see a basis to allow this testimony.").

This evidence was insufficiently probative because, despite evidence of race-based hostility towards other individuals in the East Hartford Police Department being generally probative of Mr. Jones's remaining claim of a hostile work environment, the specific context surrounding the witnesses Mr. Jones sought to call, such as their status as police officers and the disparate treatment claims related to their conduct, differed so greatly from Mr. Jones's hostile work environment claim—which was based on the alleged failure to support Mr. Jones's COLLECT recertification, being assigned the PSA position, the uniform and tasks relating to the position, and allegedly being ordered to not leave the building—that the Court had to exercise its discretion to exclude this evidence under Rule 403 because of its likelihood of confusing the

14

issues. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (upholding the district court's exclusion of evidence of sexual harassment faced by other women—insofar as it either was not observed by the plaintiff or was not related to the plaintiff—under Rule 403 despite the district court not identifying any unfair prejudice); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues . . . ."); *United States v. Bermudez*, 529 F.3d 158 (2d Cir. 2008) ("District courts have broad discretion to balance probative value against possible prejudice . . . ." (citing *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004))).

Thus, Mr. Jones has not established that the Court erred in excluding the proffered testimony.

3. The "Johnny Smith" E-Mails

At trial, Plaintiff's counsel sought to introduce the "Johnny Smith" e-mail into evidence through Mr. Jones and subsequently sought to call Christopher Arace as a witness as the author of the "Johnny Smith" e-mail. Tr. Vol. I at 98:5–100:22; Tr. Vol. II at 227:25–228:15.

In the Ruling and Order, the Court held that "the statements that Mr. Jones claims are racist or racially charged—Mr. Arace's e-mail and petition—would not be admitted for their truth, but rather for the fact that they contributed to a hostile environment that Defendants failed to remedy. Because Defendants have denied knowledge of this information, the credibility determination as to the plausibility of this lack of knowledge is an issue for the jury to decide." Ruling and Order on Mots. in Limine at 22 (internal citation omitted).

The issue was whether Defendants had knowledge of the e-mail and petition, and if they did, whether they failed to remediate. The limited purpose for this evidence would not have been served though testimony from Mr. Jones or Mr. Arace. As Defendants note, *see* Opp'n at 39–40,

the Court reaffirmed this during trial when counsel tried to admit the evidence through Mr. Jones. Tr. Vol. I at 102:23–103:4 ("MR. BREWER: I thought these exhibits were going to be allowed. I could go over the -- whether or not the chief was aware. I could just do it when I cross-examine them. THE COURT: No, I thought the limited relevance is the question about their awareness, not Mr. Jones's.").

Although counsel indicated that he would cross-examine Defendants as to their knowledge, he did not do so. Thus, Mr. Jones has not established error, much less an abuse of discretion.

Accordingly, the Court will deny Mr. Jones motion for a new trial.

## IV. CONCLUSION

For the reasons stated above, the renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and motion for a new trial under Federal Rule of Civil Procedure 59 are **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 7th day of June, 2024.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE